472 So.2d 859 (1985)
Gerald JOHNSON, Appellant,
v.
AETNA LIFE AND CASUALTY COMPANY, Appellee.
No. 84-2188.
District Court of Appeal of Florida, Third District.
July 16, 1985.
*860 Magill & Lewis and R. Fred Lewis, Miami, for appellant.
Ress, Gomez, Rosenberg & Howland, North Miami, and Steven A. Edelstein, Miami, for appellee.
Before NESBITT, DANIEL S. PEARSON and FERGUSON, JJ.
NESBITT, Judge.
Johnson appeals a final summary judgment which vacated in part an arbitration award of uninsured motorist benefits. We affirm.
Gerald and Joyce Johnson entered into a separation agreement on November 6, 1981. The agreement allowed Joyce the use and possession of a 1976 Toyota wagon. No title transfers were to take place, but the agreement provided that upon a court adopting the provisions of the separation agreement in a final judgment of dissolution, "all titles shall be effected and conveyed as provided herein." On January 22, 1982, the settlement agreement was adopted and made a part of a judgment of dissolution.
Aetna Life and Casualty Company (Aetna) issued a personal auto policy to Gerald Johnson, effective January 7, 1982 to July 7, 1982, which covered the Toyota used by Joyce and another car. Aetna charged two separate uninsured motorist (UM) coverage premiums and provided coverage in the amount of $10,000 for each person.
On February 14, 1982, twenty-three days after the dissolution, but before title was changed pursuant to Florida registration requirements, Gerald Johnson was involved in an accident with an uninsured motorist and sustained personal injuries. Johnson made a UM claim and was awarded, through arbitration, the sum of $20,000, representing $10,000 of UM coverage with regard to each car allegedly insured. Aetna filed a complaint to reduce the arbitration award of $10,000 on the ground that Gerald had no insurable interest in the Toyota and, therefore, could not stack the uninsured motorist benefits tied to the insurance on that car. Aetna's motion for summary judgment was granted and the arbitration award was reduced to $10,000.
Section 627.726, Florida Statutes (1981) states that "[a]ll contracts of casualty insurance covering subjects resident, located, or to be performed in this state shall be subject to the applicable provisions of part II of this chapter... ." Part II of the chapter is entitled "The Insurance Contract" and provides in one section that no contract of insurance of property or of any interest arising from property shall be enforceable except for the benefit of persons having an insurable interest in the thing *861 insured at the time of the loss. § 627.405, Fla. Stat. (1981).[1] It is clear then that a motor vehicle liability insurance contract is unenforceable except for the benefit of persons having an insurable interest.[2]
Uninsured motor vehicle coverage must be provided in all motor vehicle liability insurance contracts issued in this state, unless the named insured rejects the coverage in writing. § 627.727(1), Fla. Stat. (1981). Thus, the required UM benefits are an adjunct of the other coverage provided in automobile policies, which is itself dependent on an insurable interest. Consequently, UM benefits are indirectly dependent on the existence of an insurable interest.
In this case, ownership of the Toyota was transferred to Joyce by virtue of the January 22, 1982 judgment of dissolution. From that point on, Gerald had no insurable interest. Allstate Insurance Co. v. Smith, 442 F. Supp. 89 (E.D.Okla. 1977); McKinney v. State Farm Automobile Ins. Co., 349 So.2d 1091 (Ala. 1977). He had neither an interest in the vehicle itself, nor any possible exposure to legal liability arising from its use.[3] Consequently, on February 14, 1982, when the accident occurred, the insurance contract was unenforceable with regard to the Toyota. Gerald could not recover uninsured motorist benefits based on coverage for that car. Accordingly, we affirm.
Affirmed.
NOTES
[1] No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
(2) "Insurable interest" as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.
(3) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury or impairment thereof.
[2] The insurable interest may be an interest in the property itself or a particular risk insured against, such as, in the case of motor vehicle liability insurance, the possible liability arising out of the use or operation of a vehicle. See Aetna Ins. Co. v. King, 265 So.2d 716, 718 (Fla. 1st DCA 1972) ("The public policy of this state renders an insurance policy invalid when the insured has no insurable interest in the property or the risk insured... ."). See generally, Annot., 1 A.L.R.3d 1193 (1965).
[3] At the time of the accident, title to the Toyota had not been transferred to Joyce in accordance with Florida Statutes. See §§ 319.22, .23, .28, Fla. Stat. (1981). Gerald maintains that his continued "naked" title exposed him to liability for negligent use of the car, which provides an insurable interest sufficient to allow recovery of the UM benefits. We disagree. First, the judgment of dissolution made Joyce the legal owner of the Toyota by operation of law. See § 319.28, Fla. Stat. (1981). Second, it is clear that Joyce was the beneficial owner of the vehicle with complete authority to control its use. This beneficial ownership exposed her to liability for the negligent operation of the automobile. Wummer v. Lowary, 441 So.2d 1151 (Fla. 4th DCA 1983), review denied, 451 So.2d 849 (Fla. 1984); Harrell v. Sellars, 424 So.2d 881 (Fla. 1st DCA 1982). Consequently, it was Joyce, and not Gerald, who had an insurable interest in the risk arising from use of the Toyota.