In re Thomas J. **KALTER**, Debra M. Kalter, Debtors.

**Bell–Tel Federal Credit Union, Appellant,**

v.

**Thomas J. Kalter and Debra M. Kalter, Appellees.**

No. 6:00CV–290–ORL–06A.
Bankruptcy No. 99–02705–6J3.

United States District Court, M.D. Florida, Orlando Division.

Dec. 14, 2000.

valid perfected security interest in the boats and their proceeds.

Chip Trimmier, Trimmier Law Firm, Birmingham, AL, C. Stephen Trimmier, Trimmier Law Firm, Boca Raton, FL, for appellant.

Robert B. Branson, Law Offices of Robert B. Branson, Orlando, FL, for appellees.

## MEMORANDUM OPINION

GEORGE C. YOUNG, Senior District Judge.

Before the Court is an appeal of the December 3, 1999, Memorandum Opinion [1], Findings of Fact and Conclusions of Law, and Final Judgment of the Bankruptcy Court ruling in favor of the Appellees, Thomas J. and Debra M. Kalter, and against Appellant, Bell–Tel Federal Credit Union. Also before the Court is Appellees' Motion for Just Damages and Costs (Doc. # 13, filed April 27, 2000).

This Court has jurisdiction to consider this appeal pursuant to Rule 8001(a) of the Federal Rules of Bankruptcy Procedure and in accordance with the appellate jurisdiction conferred upon the District Courts by 28 U.S.C. Section 158(a).

Having thoroughly reviewed the court file, the record on appeal, and having considered the oral arguments of counsel, this Court can proceed to rule on this matter:

### Background:

On October 3, 1996, Thomas J. and Debra M. Kalter ("Debtors") signed a security agreement pledging their 1997 Mitsubishi Galant vehicle as collateral to secure debts owed to Bell–Tel Federal Credit Union ("Bell–Tel"). The certificate of title to that vehicle was issued showing that Bell–Tel held a lien against the vehicle, and Bell–Tel held the certificate of title in its possession. On March 30, 1999, Bell–Tel repossessed the Mitsubishi Galant from the Kalters because they were in default on three loan balances secured by that vehicle[2].

---

1. The December 3, 1999, Memorandum Opinion of the Bankruptcy Court was amended December 7, 1999, but there was no change in the amount of damages and attorney's fees awarded.

2. The parties have stipulated to the fact that there were three outstanding loan balances secured by the vehicle at the time of the repossession.

The next day, March 31, 1999, Debtors filed their Chapter 13 bankruptcy petition. Bell–Tel acknowledges that it was notified of such filing. On April 13, 1999, Debtors filed a Motion for Turnover of Property of the Estate (the aforementioned vehicle) and a Motion for Sanctions against Bell–Tel for failure to comply with the automatic stay provisions of the Bankruptcy Code. On April 15, 1999 Bell–Tel filed its own Motion for Sanctions against the Attorneys for the Debtors.

After an emergency hearing held that same day (April 15, 1999), the Bankruptcy Court, in ruling only on the Motion for Turnover, found that the vehicle was the property of the estate and directed Bell–Tel to return the vehicle to the Debtors instanter. Debtors were directed to make adequate protection payments to Bell–Tel. Bell–Tel filed an appeal of that ruling to the district court, but did not seek a stay of the vehicle turnover pending appeal. The Bankruptcy court continued the hearing on the two pending Motions for Sanctions.

On April 20, 1999, the Bankruptcy Court issued a notice scheduling an evidentiary hearing on the pending Motions for Sanctions for May 11, 1999[3]. One week later, on April 27, 1999, a Notice of Cancellation and Rescheduling (Bkr.Doc. # 21) was issued canceling that evidentiary hearing stating "this hearing is now canceled and notice is hereby given that these motions are rescheduled for the future confirmation hearing." The docket sheet entry for that Notice of Cancellation stated that the confirmation hearing is "yet to be scheduled".

On November 2, 1999, during the confirmation hearing (at which counsel for Bell–Tel was not present)[4], an evidentiary hearing was also held on the pending sanction motions. On December 3, 1999, the Bankruptcy Court rendered Judgment against Bell–Tel in the total amount of $6,435.00[5], ruling that Bell–Tel should be sanctioned $4,000 as damages for its willful violation of the automatic stay and awarding Debtors' counsel $2,435.00 in attorney's fees for having to litigate that issue. That Judgment is the basis for this appeal[6].

The primary issue to be decided in this appeal is whether the automobile repossessed by the appellant was a part of the estate of the appellees at the time of the filing of the bankruptcy petition.

**Discussion:**

■■■ The automatic stay operates to enjoin a creditor from attempting to possess or to exercise control over property of a bankruptcy estate once a petition has been filed. 11 U.S.C. Section 372 (1998). "Property of the estate" is broadly defined to include "all legal or equitable interests of the debtor in property as of the com-

3. The Bankruptcy Court docket sheet, at entry # 18 dated April 20, 1999, reflects the following: Notice Scheduling Evidentiary Hearing with a certificate of mailing to listed parties via the Bankruptcy Noticing Center re: Doc # 11 and # 12 ( Bell–Tel's Motion for Sanctions against Attorney for Debtor, etc.) on 5/11/99 at 11:00 a.m. at Courtroom B, 5th Floor, 135 W. Central Bvd., Orlando, FL 32801. This Court is unable to find a copy of that actual "notice" form in the record on appeal. There are, however, handwritten notations on both Bell–Tel's Motions for Sanctions (Bankruptcy Docket Nos. 11 & 12 filed with the Court on April 15, 1999), showing 5/11/99 @ 11:00 a.m.–Kathy–4/19.

4. The docket sheet reflects that on August 30, 1999 a Notice of Chapter 13 Confirmation Hearing with certificate of mailing to all cred-itors and interested parties via the Bankruptcy Noticing Center was set for November 2, 1999 at 10:15 a.m. Counsel for Bell–Tel alleges it did not receive that notice.

5. The record reflects that present at the hearing were debtor and counsel for debtor. The record also reflects that the Bankruptcy Judge stamped the Motion for Sanctions filed by Bell–Tel "Order, this motion was denied today". There is a written notation next to that stamped denial "lack of prosecution". The denial is dated 11/2/99.

6. Appellant thereafter withdrew its prior appeal of the Bankruptcy Order requiring turnover of the vehicle (Case No. 6:99–CV–952–Orl–19B) on the basis that it was premature in nature.

mencement of the case." 11 U.S.C. Section 541(a)(1) (1998). Deciding whether a debtor's interest constitutes "property of the estate" is a federal question. *In re Lewis*, 137 F.3d 1280, 1282 (11th Cir.1998). However, "the nature and existence of the [debtor's] right to property is determined by looking at state law." *Southtrust Bank of Alabama v. Thomas*, 883 F.2d 991, 995 (11th Cir.1989).

In the case of *In re Lewis*, supra, the facts were almost identical to those in the case at bar. In that case the creditor repossessed a secured automobile upon default and the debtors filed a Chapter 13 bankruptcy petition two days after the repossession. The Chapter 13 plan proposed to pay the creditor a reduced value for the automobile's outstanding secured balance. The creditor refused to return the vehicle and the debtors filed suit in the bankruptcy court for return of the vehicle. The bankruptcy court found in favor of the debtors, finding that the debtors had both title and a right of redemption in the vehicle under state law. The district court reversed, finding that the debtors had only a right of redemption and therefore the

vehicle was not the property of the estate. The Eleventh Circuit upheld the district court's position finding that upon repossession the estate retained as a part of the estate property the debtor's right to redeem the vehicle, but otherwise ownership and possessory interest in the automobile had vested in the creditor, Hall Motors, at the time of repossession. Because the *Lewis* case was decided under Alabama law, the Appellees in this case contend that *Lewis* is not a precedent to be followed in cases arising in Florida.

However, the law in Florida Statute Section 319.28(1)(b) makes it clear that upon repossession, the party from whom the vehicle has been repossessed is the "former owner"[7].

Furthermore, the case of *Johnson v. Aetna*, 472 So.2d 859 (Fla. 3rd DCA) lends support to the view that the law enunciated in *In re Lewis*, supra, is applicable to interpretation of Florida law.

In the *Johnson* case, Gerald and Joyce Johnson entered into a separation agreement in early November, 1981. The separation agreement gave Joyce Johnson the

---

7. Florida Statute 319.28(1)(b) reads as follows:

"In case of repossession of a motor vehicle or mobile home pursuant to the terms of a security agreement or similar instrument, an affidavit by the party to whom possession has passed stating that the vehicle or mobile home was repossessed upon default in the terms of the security agreement or other instrument shall be considered satisfactory proof of ownership and right of possession. At least 5 days prior to selling the repossessed vehicle, any subsequent lienholder named in the last issued certificate of title shall be sent notice of the repossession by certified mail, on a form prescribed by the department. If such notice is given and no written protest to the department is presented by a subsequent lienholder within 15 days from the date on which the notice was mailed, the certificate of title or the certificate of repossession shall be issued showing no liens. If the former owner or any subsequent lienholder files a written protest under oath within such 15-day period, the department shall not issue the certificate of title or certificate

of repossession for 10 days thereafter. If within the 10-day period no injunction or other order of a court of competent jurisdiction has been served on the department commanding it not to deliver the certificate of title or certificate of repossession, the department shall deliver the certificate of title or repossession to the applicant or as may otherwise be directed in the application showing no other liens than those shown in the application. Any lienholder who has repossessed a vehicle in compliance with the provisions of this section may apply to the tax collector's office or to the department for a certificate of repossession or to the department for a certificate of title pursuant to s. 319.323. Proof of the required notice to subsequent lienholders shall be submitted together with regular title fees. A lienholder to whom a certificate of repossession has been issued may assign the certificate of title to the subsequent owner. Any person found guilty of violating any requirements of this paragraph shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."

use and possession of a Toyota vehicle. No title transfers were to take place, but the agreement provided that upon a court adopting the provisions of the separation agreement in a final judgment of dissolution all titles shall be effected and conveyed as provided in the agreement. On January 22, 1982 the settlement agreement was adopted and made a part of a judgment of dissolution.

On January 7, 1982, prior to the date of the judgment of dissolution, Aetna Life and Casualty Company (Aetna) issued a personal automobile policy to Gerald Johnson for the period January 7, 1982 thru July 7, 1982, which covered the Toyota vehicle used by Joyce Johnson and another vehicle. Aetna charged two separate uninsured motorist (UM) coverage premiums and provided coverage in the amount of $10,000 for each person.

On February 14, 1982, twenty-three days after the judgment of dissolution, but before the title was changed pursuant to Florida registration requirements, Gerald Johnson was involved in an accident with an uninsured motorist and sustained personal injuries. Gerald Johnson was driving the Toyota vehicle which had been awarded to Joyce Johnson.

Thereafter, Gerald Johnson made an uninsured motorist claim and was awarded, through arbitration, the sum of $20,000, representing $10,000 of uninsured motorist coverage with regard to each car allegedly insured. Aetna filed a complaint to reduce the arbitration award to $10,000 on the ground that Gerald Johnson had no insurable interest in the vehicle and, therefore, could not stack the uninsured motorist benefits tied to the insurance on that car. Aetna's motion for summary judgment was granted and the arbitration award was reduced to $10,000. The court agreed, reasoning that ownership passed to Joyce Johnson by operation of law when the judgment of dissolution was made final on January 22, 1982. The Third District Court of Appeals reasoned:

"At the time of the accident, title to the Toyota had not been transferred to Joyce in accordance with Florida Statutes. See Sections 319.22, .23, .28, Fla. Stat. (1981). Gerald maintains that his continued 'naked' title exposed him to liability for negligent use of the car, which provides an insurable interest sufficient to allow recovery of the UM benefits. We disagree. First, the judgment of dissolution made Joyce the legal owner of the Toyota by operation of law. See Section 319.28, Fla.Stat. (1981). Second, it is clear that Joyce was the beneficial owner of the vehicle with complete authority to control its use. This beneficial ownership exposed her to liability for the negligent operation of the automobile.... Consequently, it was Joyce, and not Gerald, who had an insurable interest in the risk arising from the use of the Toyota."

*Johnson v. Aetna, id.,* at 861 [n. 3].

As referenced above, the Florida courts construed Florida Statutes Section 319.28 as causing ownership to pass, regardless of the fact that formal title had not yet transferred pursuant to Florida Statutes Section 319.22, .23, or .28.

The debtor's rely upon *In re Iferd,* 225 B.R. 501 (Bankr.N.D.Fla.1998) to refute the Credit Union's position. That case relied on Florida's Uniform Commercial Code to determine that a debtor retains title to a repossessed vehicle. According to the *Iferd* court, "the Florida UCC grants the secured party the right to repossess the collateral but has no language addressing title." *Iferd* at 503.

This Court agrees with the Credit Union's position that the UCC does not operate to cause title to pass to the Credit Union in this case, but that the Florida Statutes governing title, specifically Florida Statutes 319.28 does.

Accordingly, for the reasons set forth above:

1. The decision of the Bankruptcy Judge finding that the vehicle in issue here

was a part of the Appellees' bankruptcy estate at the time of the filing of the bankruptcy petition will be **REVERSED**. Judgment in accordance herewith will be separately issued in favor of Appellant, Bell–Tel Federal Credit Union.

2. As a result of the ruling herein, it is unnecessary to consider the other issues raised by the Appellant in this case.

3. Appellees' Motion for Just Damages and Costs (Doc. # 13) will be **DENIED**.