382 So.2d 27 (1979)
J.E. JOYNER, INC., Appellant,
v.
Bernard ETTLINGER, etc., Appellees.
Nos. MM-18, MM-19.
District Court of Appeal of Florida, First District.
September 18, 1979.
Rehearing Denied April 16, 1980.
*28 Eugene Loftin, Jacksonville, for appellant.
David R. Lewis, Jacksonville, for appellees.
SHIVERS, Judge.
These consolidated appeals are from a Final Judgment on Intervention entered in a foreclosure action based on a security agreement and from a Final Judgment entered in a replevin action. These actions were consolidated for non-jury trial. In the foreclosure action appellant J.E. Joyner, Inc. (Joyner) was the plaintiff, appellees Bernard Ettlinger and A.A. Rosier-Rooter, Inc. (A.A.) were defendants, and appellees Roto-Rooter Sewer Service of Duval County, Inc. (Roto-Rooter) and Bernard Ettlinger as trustee of Roto-Rooter Sewer Service of Duval County, Inc., a Profit Sharing Plan (Profit Sharing Plan) were intervenors. The replevin action was filed by Profit Sharing Plan against Joyner.
On October 31, 1974, A.A. executed a promissory note and security agreement in favor of Joyner. The security agreement included an "after-acquired" clause whereby property purchased by A.A. after the date of the security agreement would also act as security. This security agreement was perfected by Joyner.
In November of 1974, the Profit Sharing Plan loaned A.A. the money necessary to purchase two tractors, each equipped with a front-end loader and backhoe (hereinafter called equipped tractors or equipped tractor, if singular). A.A. executed a security agreement in favor of Profit Sharing Plan which was perfected. A.A. failed to make the January 15, 1976, payment. The Profit Sharing Plan immediately claimed the equipped tractors in satisfaction of its security agreement. One of the equipped tractors was stored at the location owned by Ettlinger and formerly leased to A.A. while the other was in a repair shop. Roto-Rooter had previously installed seven radios owned by Roto-Rooter in trucks owned by A.A.
A.A. defaulted on Joyner's security agreement and permitted Joyner to pick up the encumbered property specifically listed in Joyner's security agreement on February 2, 1976, from the location A.A. had rented from Ettlinger. Joyner also took the one equipped tractor from these premises and the seven radios pursuant to the after-acquired clause. On February 2, 1976, Joyner filed its complaint to foreclose the security agreement.
The Profit Sharing Plan filed the replevin action on May 13, 1976, seeking recovery of the equipped tractor taken by Joyner on February 2, 1976, and damages. On June 11, 1976, the Court in the replevin suit ordered Joyner to surrender possession of the equipped tractor to the Profit Sharing Plan.
On October 22, 1976, the Court in the foreclosure action appointed a receiver and ordered him to take possession of both of the equipped tractors. The receiver took *29 possession of both of the equipped tractors. From the date the Profit Sharing Plan seized possession of the equipped tractors in January, 1976, the equipped tractor that was in the repair shop on February 2, 1976, was in the possession of the Profit Sharing Plan.
Both equipped tractors and the radios were sold on November 12, 1976, pursuant to court order in the foreclosure suit. Roto-Rooter and the Profit Sharing Plan objected to the sale and were permitted to intervene in the foreclosure suit seeking possession of the radios and of the equipped tractors, respectively, and damages.
The equipped tractors in the possession of the receiver were used and were damaged while being used. On April 5, 1977, the court in the foreclosure action ordered the receiver to deliver possession of both of the equipped tractors to the Profit Sharing Plan. The court's order specifically ruled that the Profit Sharing Plan "shall retain and preserve said equipment subject to the further orders of this Court and be able to turn over said equipment to whomever this Court shall later determine to be the possessor thereof."
On May 12, 1977, the court in the foreclosure suit confirmed the sale except for the equipped tractors and radios and entered a deficiency judgment in favor of Joyner and against A.A.
The foreclosure action and replevin action were consolidated for trial. By Final Judgment on Intervention entered in the foreclosure action, the court found that the Profit Sharing Plan's purchase money security interest in the equipped tractors was superior in priority to Joyner's security agreement, that the Profit Sharing Plan suffered the loss of use of the equipped tractors from October 1976 until April 1977 and that the equipment was greatly depreciated in value and damaged when it was used during that time in violation of the court's order that it should be held in safekeeping by the receiver. Damages and possession were entered in favor of Profit Sharing Plan. Roto-Rooter was found to be the sole owner of the radios and damages that could be reduced by return of the radios were entered in its favor. By Final Judgment entered in the replevin action, the court awarded the Plan permanent possession of the equipped tractor taken by Joyner on February 2, 1976, and awarded the Profit Sharing Plan damages for the loss of use for approximately four months beginning February 2, 1976, and for depreciation and damages to the equipment.
As regards the Motorola radios, there is competent, substantial evidence that the radios were owned by Roto-Rooter and not A.A., that Joyner's taking of the radios was wrongful, and that Roto-Rooter was damaged by the taking. The amount of damages was based on competent, substantial evidence. The Final Judgment on Intervention as regards the radios is, therefore, AFFIRMED.
The Profit Sharing Plan's purchase money security interest in the equipped tractors had priority to Joyner's "after-acquired" security interest. The Profit Sharing Plan, therefore, had the superior right to possession of the equipped tractors following default. However, Joyner's security interest attached to the equity, if any, that A.A. may have had in the equipped tractors. International Harvester Credit Corp. v. American National Bank of Jacksonville, 296 So.2d 32 (Fla. 1974).
When the Profit Sharing Plan seized possession of the equipped tractors on January 15, 1976, it did not automatically become the owner of the equipped tractors. The Profit Sharing Plan became a secured party in possession of collateral whose rights and duties are governed by Section 679.207, Florida Statutes. Section 679.207(4) provides as follows:
"(4) A secured party may use or operate the collateral for the purpose of preserving the collateral or its value or pursuant to the order of a court of appropriate *30 jurisdiction or, except in the case of consumer goods, in the manner and to the extent provided in the security agreement."
Examination of the Profit Sharing Plan's security agreement reveals no provision that would authorize use of the equipped tractors beyond the extent provided in § 679.207(4).
Section 679.505(2) Fla. Stat. (1977) is as follows:
"(2) In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor and except in the case of consumer goods to any other secured party who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or is known by the secured party in possession to have a security interest in it. If the debtor or other person entitled to receive notification objects in writing within 30 days from the receipt of the notification or if any other secured party objects in writing within 30 days after the secured party obtains possession the secured party must dispose of the collateral under s. 679.504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation."
Joyner, as a secured party, was entitled to notice that the Profit Sharing Plan intended to retain the collateral in satisfaction of its purchase money security interest. The Profit Sharing Plan failed to comply with the mandatory provisions of § 679.505(2). Its right to use the collateral is therefore governed by the provisions of § 679.207. While the Profit Sharing Plan had the right to possession of the tractors, it did not have the right to full use of the equipped tractors as if it were the owner. The damages awarded by the trial court to the Profit Sharing Plan and against Joyner for loss of use of the equipped tractors cannot be sustained.
The trial court's award of damages to the Profit Sharing Plan and against Joyner for the damages and depreciation to the equipped tractors while the equipped tractors were in the hands of the receiver is unsupported. Joyner is not the insurer of the receiver and cannot be held liable for the acts of the receiver in the absence of evidence that Joyner itself caused the damage. An examination of the record fails to reveal such evidence.
The Profit Sharing Plan is not entitled to recover more than the value of both equipped tractors as of the date Joyner seized the one equipped tractor on February 2, 1976, or the amount of its lien, whichever is less, plus interest. The Profit Sharing Plan's recovery should be reduced by the value of the equipped tractors on the date of the final judgment and the damages and depreciation to the equipped tractors while in the Profit Sharing Plan's possession prior to final judgment. Joyner would be liable for any damages and depreciation to the one equipped tractor while in Joyner's possession to the extent necessary to pay the Profit Sharing Plan's recovery as above calculated. Joyner would also be liable for interest on the value of the two equipped tractors as of February 2, 1976, or on the amount of the Profit Sharing Plan's lien, whichever is less, from February 2, 1976, until the date of the final judgment.
The trial court should determine who was responsible for the damages and depreciation to the equipped tractors while in the hands of the receiver and the amounts thereof. The court should also determine to whom the receiver should be made to account for such damages and depreciation.
AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.
MILLS, C.J., and ROBERT P. SMITH, J., concur.