528 So.2d 106 (1988)
Donald BUNTING, Appellant/Cross Appellee,
v.
DALY'S, INC., a Corporation Licensed and Doing Business in Florida, Appellee/Cross Appellant, and
Michael Flanagan, 1100 Gateway Inc., a Corporation Licensed and Doing Business in Florida, Appellee.
No. 87-0058.
District Court of Appeal of Florida, Fourth District.
July 13, 1988.
Roberta G. Stanley of Dingwall & Stanley, and Kenneth W. Gieseking of Law Offices of Kenneth W. Gieseking, Fort Lauderdale, for appellant/cross appellee.
Richard M. Altman of Kruse & Livoti, Fort Lauderdale, for appellee/cross appellant-Daly's, Inc.
DOWNEY, Judge
Appellant, Donald Bunting, appeals from a final judgment entered upon a directed verdict in favor of appellee, Daly's, Inc.
The evidence taken most favorably to appellant reflects that Bunting parked his 1978 Ford pickup truck on a vacant lot adjacent to the Gateway Building on Sunrise Boulevard in Fort Lauderdale where he had parked on prior occasions. Bunting was not aware that parking there was prohibited as there was no sign of any kind posted, nor was he ever so advised otherwise. In any event, the truck was towed away without his permission by Daly's, Inc., a towing firm, at the direction of appellee, Michael Flanagan. Bunting demanded the return of his truck and the personal property contained therein, but Daly's, Inc., refused. Daly's, Inc., would not release the truck to anyone other than Edwin Moline, President of General Makes Auto Leasing, which was listed as the registered owner of the dealer license plate on the truck. The evidence further shows that the truck was purchased in Illinois by Bunting, who had for some time carried on a wholesale vehicle sales business, using the name Tri-State Motors. Bunting received a sales receipt for $2,500 from the seller of the truck, Northwest Truck Sales, but the title certificate was issued in the name of Tri-State Motors. Bunting ceased doing business in Illinois and came to Florida, *107 where he entered into a business relationship wholesaling cars with General Makes Auto Leasing, which accounts for the truck's dealer tag being registered to said firm. The proof showed the truck belonged to Bunting, not General Makes.
When Daly's, Inc., persisted in refusing to release the truck, Bunting filed a second amended complaint in four counts for 1) violation of section 715.07, Florida Statutes (1985), 2) wrongful conversion, 3) civil theft, and 4) punitive damages. During the presentation of appellant's case in chief, appellee moved for a directed verdict, although appellant had not yet rested. The motion was granted; judgment was entered thereon; and appellant perfected this appeal.
We have no difficulty with the posture of the case when the trial court granted the directed verdict. Granted it is customary and proper before considering a motion for directed verdict against a plaintiff on his case in chief to wait until the plaintiff has rested. However, it is clear here that the plaintiff/appellant had finished his presentation of evidence for proving his interest and ownership of the truck and that his remaining witnesses involved damages only. Therefore, while not approving a premature consideration of such a motion before the party rests, we find no reversible error involved on that score.
The main thrust of appellee's case seems to be that appellant could not maintain this complaint because he did not hold the title certificate in his name. Thus, relying on a portion of section 319.22(1), Florida Statutes (1985),[1] appellee contends that appellant has neither standing nor a cause of action for conversion, civil theft or negligence. We reject that contention because the reference statute has to do with transfers of title and the acquisition of marketable title. The entire section provides:
319.22 Transfer of title. 
(1) Except as provided in ss. 319.21 and 319.28, a person acquiring a motor vehicle or mobile home from the owner thereof, whether or not the owner is a licensed dealer, shall not acquire marketable title to the motor vehicle or mobile home until he has had issued to him a certificate of title to the motor vehicle or mobile home; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate for such motor vehicle or mobile home for a valuable consideration. Except as otherwise provided herein, no court shall recognize the right, title, claim or interest of any person in or to any motor vehicle or mobile home sold, disposed of, mortgaged, or encumbered, unless evidenced by a certificate of title duly issued to that person, in accordance with the provisions of this chapter.
Said section has been construed by this court as affecting the marketability of title, not the mere transfer or passage of title. In Correria v. Orlando Bank & Trust Company, 235 So.2d 20, 24 (Fla. 4th DCA 1970), this court held:
It has been settled law in this jurisdiction for many years, as well as in other jurisdictions, that the failure of the purchaser to obtain the title certificate at the time of sale does not prevent the passage of title from the seller to the buyer... . Florida Statute Section 319.22(1), F.S.A., provides that a purchaser shall not acquire a "marketable" title until the certificate of title is issued to him. The Statute does not provide that no valid title shall be perfected until a purchaser obtains a title certificate [citations omitted].
This holding was followed more recently in Florida Department of Corrections v. Blount Pontiac-GMC, Inc., 411 So.2d 930, 932 (Fla. 1st DCA 1982), wherein that court said:

*108 In other words, Section 319.22(1) provides that a purchaser shall not acquire a "marketable" title until the certificate of title is issued to him; however, it does not prevent valid title from being passed.
We have considered all of appellee's arguments in support of the directed verdict and judgment, but find ourselves unable to agree. In the light of the legal principles recognized above, the evidence considered most favorably to appellant creates a question of fact for the jury precluding direction of a verdict.
Accordingly, we reverse the judgment appealed from, including the allowance of attorney's fees awarded to appellee, and remand the cause for a new trial.
LETTS and STONE, JJ., concur.
NOTES
[1] That portion provides:

Except as otherwise provided herein, no court in any case or at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle or mobile home sold, disposed of, mortgaged, or encumbered, unless evidenced by a certificate of title duly issued to that person, in accordance with the provisions of this chapter.