**In re Kevin L. IFERD, Debtor.**

**Bankruptcy No. 98–00583–PCY5.**

United States Bankruptcy Court,
N.D. Florida,
Panama City Division.

Sept. 22, 1998.

Ms. Shelley Griffin, Tyndall Federal Credit Union, Panama City, FL, for Tyndall FCU.

J. Randall Frier, Tallahassee, FL, for Debtor.

### MEMORANDUM OPINION
### ON TURNOVER

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came on for hearing on August 31, 1998 on the Debtor's Motion to Compel Turnover of Estate Property Held By Custodian. After hearing evidence and arguments of counsel for both parties, I announced Findings of Fact and Conclusions of Law from the bench as authorized by Bankruptcy Rule 7052. Based on those Findings and Conclusions, I granted the Debtor's motion. I now issue this Memorandum Opinion to memorialize and supplement my Findings of Fact and Conclusions of Law announced in open court.

## FACTS

Tyndall Federal Credit Union ("TFCU") loaned money to Kevin L. Iferd ("Iferd" or "Debtor") for the purchase of a vehicle. Iferd gave TFCU a security interest in a 1996 Dodge Avenger ("vehicle") and presently owes $15,000 on the loan. After Iferd defaulted on his payments. TFCU repossessed the vehicle on August 14, 1998. Iferd filed for Chapter 13 relief on August 17, 1998. TFCU has held the vehicle since August 14th, and the vehicle is valued at $12,000. On August 25th, Iferd moved to compel turnover of the vehicle as property of his bankruptcy estate, and requested an emergency hearing.

## DISCUSSION

### A. Turnover

A debtor's right to compel turnover is generally contingent upon his interest in the property. The Bankruptcy Code provides that "an entity, other than a custodian, in possession ... during the case, of property that the trustee may use, sell, or lease under [11 U.S.C. § 363], shall deliver to the trustee ... such property ...." 11 U.S.C. § 542(a) (1997); see Brooks v. World Omni, 207 B.R. 738, 740 (Bankr.N.D.Fla.1997). In the Eleventh Circuit,

> the court may generally order a third party to turn property in its possession over to the debtor's estate if three primary requirements are met ... First, such property must be "property of the estate[ ]" ... Second, at the moment the debtor filed a petition, the debtor must have had a right to use, sell, or lease the property ... Finally, upon request, the court must ensure that the third party's interest is adequately protected.

In re Lewis, 137 F.3d 1280, 1282–83 (11th Cir.1998) (internal citations omitted). In the present case, the parties only contest the nature of Iferd's interest in the vehicle, and ultimately, whether the vehicle is "property of the estate."

■ "Property of the estate" has been broadly defined by the Code to include "all legal or equitable interests of the debtor in property as of the commencement of the case [wherever located and by whomever held.]" 11 U.S.C. § 541(a)(1); see United States v. Whiting Pools, Inc., 462 U.S. 198, 203, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). "Both the congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate." Id. at 204, 103 S.Ct. 2309. Some courts have construed Whiting Pools to "create[ ] a presumption that all property levied upon pre-petition is included in the debtor's estate, and unless the creditor can show that the levy completely transferred ownership of the property to the creditor, leaving the debtor with no remaining interest, the property must be returned to the estate." SPS Technologies Inc. v. Baker Material Handling Corp., 153 B.R. 148, 152 (Bankr.E.D.Pa.1993); accord Matter of Turner, 209 B.R. 558, 563–64 (Bankr.N.D.Ala.1997). In the Eleventh Circuit, "[w]hether a debtor's interest constitutes 'property of the estate' is a federal question." Lewis, 137 F.3d at 1283; In re Thomas, 883 F.2d 991, 995 (11th. Cir.1989), cert. denied, 497 U.S. 1007, 110 S.Ct. 3245, 111 L.Ed.2d 756 (1990). However, the "nature and existence of the [debtor's] right to property is determined by looking at state law." Lewis, 137 F.3d at 1283; Thomas, 883 F.2d at 995; see In re Koesling, 210 B.R. 487, 491 (Bankr.N.D.Fla.1997). Here, I must determine Iferd's interest in the vehicle by reviewing Florida law.

### B. Nature of Iferd's Rights

■ TFCU argues that the outcome of this case is controlled by In re Lewis, an Eleventh Circuit Court of Appeals case that originated in Alabama. In Lewis, the debtor purchased a used car from the creditor, granting the creditor a security interest. The creditor repossessed the debtor's car after the debtor breached the purchase agreement. The debtor and his wife filed for relief under Chapter 13 of the Bankruptcy Code. When the creditor refused to turn over the vehicle, the debtor sought to compel turnover pursuant to § 542(a). The Lewis court applied Alabama law under which a debtor loses both title and right to possession

to a repossessed vehicle. *Lewis*, 137 F.3d at 1283–84 (using the Alabama law of conversion for guidance). Thus, the debtor had no right to title, possession, or "any other functionally equivalent ownership interest in the repossessed automobile" *Id.* at 1284.

The *Lewis* decision does not control here because it applied Alabama law. However, I shall determine the nature of Iferd's interest in the vehicle by reviewing state law. *See Koesling*, 210 B.R. at 491 (determining the nature of the debtor's ownership interest in promissory notes under Florida law); *see also In re Littleton*, 220 B.R. 710, 714 (Bankr.M.D.Ga.1998) (declining to follow *Lewis* because Georgia law is different from Alabama law). Thus, I must determine whether, under Florida law, Iferd has a sufficient interest in his repossessed vehicle to render it "property of the estate." *See In re Lewis*, 137 F.3d at 1284.

Iferd cites to *In re Health America of Florida, Inc.*, 22 B.R. 268 (Bankr.M.D.Fla. 1982) to support his proposition that a debtor in default continues to hold legal ownership rights in repossessed collateral until the creditor re-sells the collateral. However, a closer look at *Health America of Florida* shows that case does not specifically address the issue present here. That case does nothing more than vaguely cite to several United States Supreme Court cases, and offers no state law analysis of whether a debtor retains ownership of repossessed collateral. As such, I must look elsewhere for guidance.

■ Florida has adopted the Uniform Commercial Code ("UCC"). *See* FLA. STAT. chs. 672, 679 (1997) (UCC articles on sales and secured transactions). Unlike the *Lewis* court's determination regarding Alabama law, Florida courts have relied on the UCC when determining debtors' rights after repossession. *See Joyner v. Ettlinger*, 382 So.2d 27, 29–30 (Fla. 1st DCA 1979) (using § 679.207(4) to conclude that the secured party did not automatically become the owner of the collateral upon repossession); *Seibel v. Society Lease, Inc.*, 969 F.Supp. 713, 718 (M.D.Fla.1997) ("A creditor may not breach the peace during a self-help repossession.") (citing § 679.503); *see also ITT Indus., Credit Co. v. Regan*, 487 So.2d 1047, 1050 (Fla.1986) (using the UCC to determine the extent of the secured party's interest, regardless of who has title); *cf. In re Burnsed*, 224 B.R. 496 (Bankr. M.D.Fla.1998)(analogizing a title loan contract to a secured transaction); *but see Lewis*, 137 F.3d at 1283–84 (relying on state conversion law rather than the UCC). The rights and duties of parties to a security agreement are thus governed by the Florida UCC provisions on sales and secured transactions.

Upon reviewing Florida case and statutory law, there are many logical reasons to support a ruling that legal title does not shift to the creditor upon repossession. The Florida UCC grants the secured party the right to repossess the collateral but has no language addressing title. FLA. STAT. § 679.503. "This article [allows] the secured party in most cases to take possession without issuance of judicial process." FLA. STAT. ANN. § 679.503 Uniform Commercial Code Comment (West 1990). As such, this section does not grant title to the creditors. *Cf. Turner*, 209 B.R. at 565 (similarly construing the applicable Alabama law). The UCC grants debtors certain rights after repossession and imposes certain duties upon the secured party in possession. *See, e.g.*, FLA. STAT. §§ 679.503 (repossession must be performed without "breach of the peace"); 679.207 (secured party's duty to use "reasonable care in the custody and preservation of the collateral in his possession"); 679.504(2) (debtor's right to surplus after sale); 679.506 (debtor's right to redeem collateral); 672.706(3) (buyer's right to notice of a private sale). The most logical presumption I can make is that the debtor retains legal title to the repossessed vehicle. *See In re Walker*, 204 B.R. 812, 816 (Bankr.M.D.Fla. 1997) (implying that the debtor has legal title to repossessed property until the time for redemption expires). "If title had already passed to [the creditor] upon default, the Code would have no reason to provide the debtor with a cause of action for failure to use reasonable care after repossession" *Turner*, 209 B.R. at 565. In Florida, the secured party thus has the right to possession of the collateral upon the debtor's default but not the right to its full use as if it were the

owner. *See Joyner*, 382 So.2d at 30; *but see Lewis*, 137 F.3d 1280 (construing Alabama law to vest legal title to the creditor upon repossession).

One Florida court follows *Lewis* and implies that a debtor's property rights in a vehicle transfers when a creditor repossesses the vehicle. *See Burnsed*, 224 B.R. at 500–501. The facts in *Burnsed* are distinguishable from the facts at hand because *Burnsed* involved a title loan contract and only analyzed whether the debtor had a right to redemption. *Id.* A title loan contract affords the debtor far fewer rights after default than does a secured transaction. *Id.* at 499 (noting that upon default in title loan agreement, repossession is not subject to the "no breach of peace" rule, there is no restriction that the collateral be sold at a "commercially reasonable sale after reasonable notice to the debtor," and after the sale, the debtor is entitled to neither a sale surplus nor deficiency). My decision thus does not conflict with *Burnsed*. More importantly, my decision also does not conflict with *Lewis* because I am construing Florida law.

## C. Applicability of Certificate of Title Act

 TFCU alternatively asserts that Iferd does not have title to the repossessed vehicle by virtue of Florida Statutes § 319.22. Chapter 319 of Florida Statutes takes precedence over any inconsistent provisions of the UCC. *See Correria v. Orlando Bank & Trust Co.*, 235 So.2d 20, 24 n. 2 (Fla.App.1970). Under § 319.22,

> Except as provided in ... [section] 319.28, a person acquiring a motor vehicle ... from the owner thereof ... shall not acquire marketable title to the motor vehicle ... until he has issued to him a certificate of title to the motor vehicle ...: nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or an assignment of such certificate for such motor vehicle ... for a valuable consideration.

FLA. STAT. § 319.22. Under § 319.28(2)(b),

> In the case of repossession of a motor vehicle ... pursuant to the terms of a security agreement or similar instrument, an affidavit by the party to whom possession has passed stating that the vehicle ... was repossessed upon default in the terms of the security agreement or other instrument shall be considered satisfactory proof of ownership and right of possession.

FLA. STAT. § 319.28(2)(b). TFCU claims that it repossessed the vehicle pursuant to the terms of the security agreement and, thus, has been vested ownership and a right of possession. As such, TFCU asserts that the debtor has no ownership rights in the vehicle.

As a matter of Florida case law, TFCU's reliance on this Act is misplaced. The statute TFCU relies on "provides that a purchaser shall not acquire a 'marketable' title until the certificate of title is issued to him. The statute does not provide that *no valid title* shall be perfected until a purchaser obtains a title certificate." *Correria*, 235 So.2d at 24 (emphasis in original). Florida cases have consistently limited the application of § 319.22 to cover only the marketability of title and not the transfer or passage of title. *See id; see also Cooney v. Jacksonville Trans. Auth.*, 530 So.2d 421, 422 (Fla. 1st DCA 1988) ("[S]ection 319.22(1) deals only with marketable title, and does not govern the seller's liability for the purchaser's negligent operation of the vehicle.") (citations omitted); *Bunting v. Daly's Inc.*, 528 So.2d 106, 107 (Fla. 4th DCA 1988) (finding a substantial issue of material fact as to whether a purported owner owned the truck, notwithstanding the fact that the title certificate was not in his name).

There is no Florida case law on point with regard to § 319.28. However, since courts have held that § 319.22 deals only with marketability of title. I shall construe § 319.28 as also affecting marketability and not validity of title. *Correria*, 235 So.2d at 24; *Cooney*, 530 So.2d at 422; *Bunting*, 528 So.2d at 107. Thus, Florida Statutes Chapter 319 has no affect on the outcome of this motion.

## CONCLUSION

 I find that under Florida law, a debtor retains title and other ownership interests in a repossessed motor vehicle until the cred-

itor re-sells the vehicle. Here, TFCU only has possession of the vehicle, and Iferd has legal title. This interest is sufficient to make the vehicle property of estate. *See* 11 U.S.C. § 541(a); *Whiting Pools,* 462 U.S. at 203, 103 S.Ct. 2309. Based on the foregoing, I direct TFCU to turn possession over to Iferd's estate without further delay.

This Memorandum Opinion is entered supplemental to the Order the Court entered on September 10, 1998 compelling the turnover of the vehicle.