[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 01-10417

_____

D. C. Docket No. 00-00290-CV-ORL-06K

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 07, 2002
THOMAS K. KAHN
CLERK

In Re:

THOMAS JOH KALTER,
DEBRA MARIE KALTER,

Debtors,

--------------------------------------------------------------------------------

BELL-TEL FEDERAL CREDIT UNION,

Plaintiff-Appellee,

versus

THOMAS JOH KALTER,
DEBRA MARIE KALTER,

Defendants-Appellants.

_____

No. 01-13326

_____

D. C. Docket No. 00-00396-CV-ORL-31

In Re:

MATTHEW J. CHIODO,

Debtor,

---------------------------------------------------------------------------------

TIDEWATER FINANCE COMPANY,

                                                            Plaintiff-Appellee,

                            versus

MATTHEW J. CHIODO,

                                                            Defendant-Appellant.

                    _____

                    Appeals from the United States District Court
                        for the Middle District of Florida
                    _____
                            **(June 7, 2002)**

Before EDMONDSON, Chief Judge, HULL and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

These two cases have been consolidated on appeal because they raise the same issue: whether, during bankruptcy proceedings, a debtor can compel a secured creditor to turn over a vehicle repossessed before the debtor filed his bankruptcy petition. Debtors-Appellants Thomas and Debra Kalter and Debtor-Appellant Matthew Chiodo ("the Debtors") argue that the district court erred in finding that their vehicles, repossessed prepetition by Creditor-Appellee Bell-Tel Federal Credit Union and Creditor-Appellee Tidewater Finance Company ("the Creditors"), respectively, were not property of the Debtors' bankruptcy estates at the time that the Debtors filed for

bankruptcy. After careful review of the record and the parties' arguments, we find no error and affirm both district court rulings.

I.

The relevant facts in each case are similar and straightforward. In the <u>first</u> case, the Kalters signed a security agreement on October 3, 1996 pledging their 1997 Mitsubishi Galant vehicle as collateral to secure debts owed to Bell-Tel Federal Credit Union ("Bell-Tel"). On March 30, 1999, Bell-Tel repossessed the Mitsubishi because the Kalters were in default on the three loan balances secured by that vehicle.

The next day, the Kalters filed their Chapter 13 bankruptcy petition, and verbally requested the return of the vehicle from Bell-Tel. On April 13, 1999, the Kalters filed a motion for turnover of the vehicle, and a motion for sanctions against Bell-Tel for failing to comply with the Bankruptcy Code's automatic stay provisions. The bankruptcy court held an emergency hearing on the motion for turnover, and, working on the assumption that the repossessed vehicle was property of the Kalters' bankruptcy estate, directed Bell-Tel to return the vehicle to the Kalters and directed the Kalters to make adequate protection payments to Bell-Tel.

In a later evidentiary hearing, the bankruptcy court considered the pending sanction motions. It found that Bell-Tel intentionally and willfully violated the automatic stay by retaining the vehicle, thereby causing damage to the Kalters, in

terms of missed work, the cost of a replacement rental, and damage to the vehicle's fuel injectors. It thus entered judgment against Bell-Tel in the amount of $6,435.00.

Bell-Tel timely appealed this judgment to the district court. And, on December 14, 2000, the district court reversed the order of the bankruptcy court, finding in favor of Bell-Tel and denying the Kalters' motion for just damages and costs. See Bell-Tel Fed. Credit Union v. Kalter (In re Kalter), 257 B.R. 93 (M.D. Fla. 2000). The Kalters appealed the district court decision to this Court.

In the second case, Chiodo purchased a used 1998 Honda Civic from Scott Clark Toyota on May 21, 1999. Scott Clark financed the purchase under a Simple Interest Motor Honda Contract and Security Agreement, reserving a security interest in the Honda as collateral for the unpaid purchase price. Scott Clark assigned the contract to Tidewater Finance Company ("Tidewater"). Subsequently, Chiodo defaulted on the contract, and Tidewater repossessed the Honda on October 14, 1999.

Thereafter, Tidewater gave Chiodo notice that it intended to sell the Honda at a private sale pursuant to a notice of sale. The notice of sale notified Chiodo of his right to demand a public sale or to redeem the Honda by paying the total outstanding balance owed in full prior to the private sale.

Before Tidewater could sell the Honda, on October 29, 1999, Chiodo filed a case under Chapter 13 of the Bankruptcy Code, and an automatic stay went into effect.

4

After filing for bankruptcy, Chiodo made an informal demand upon Tidewater for turnover of the Honda. On November 3, 1999, Tidewater filed with the bankruptcy court its motion to terminate or condition the automatic stay. Tidewater and Chiodo then entered into an agreement that provided for turnover of the Honda to Chiodo for use in his Chapter 13 reorganization, in exchange for adequate protection for Tidewater's interest in the Honda. Tidewater and Chiodo agreed, however, that each party's legal rights would be preserved, and that Tidewater would not be prejudiced in its legal position by the voluntary surrender of the Honda to Chiodo pursuant to the agreement. Chiodo then regained possession of the car.

On February 18, 2000, the bankruptcy court entered its Order denying Tidewater's motion for relief from stay. Tidewater timely appealed this decision to the district court. On May 30, 2001, the district court, relying on its previous decision in Kalter, entered judgment in favor of Tidewater, reversing the bankruptcy court's decision. Chiodo appealed the district court decision to this Court.

We consolidated the appeals of the Kalters and Chiodo.

II.

We review determinations of law, whether made by the bankruptcy court or by the district court, under a de novo standard of review. See Lewis v. Charles R. Hall Motors, Inc. (In re Lewis), 137 F.3d 1280, 1282 (11th Cir. 1998).

5

Under the Bankruptcy Code, a court may order a third party to turn property in its possession over to the debtor's estate if, among other things, such property is considered "property of the estate." See 11 U.S.C. §§ 541 (defining "property of the estate"), 542(a) (authorizing turnover). "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In both cases on appeal, the district court reversed the bankruptcy court's determination that the vehicles, repossessed prior to the Debtors' filings of their bankruptcy petitions, were part of the Debtors' bankruptcy estates.[1] Thus, the central question on appeal is whether the vehicles repossessed prepetition were in fact property of the Debtors' bankruptcy estates. We hold that the repossessed vehicles were not property of the Debtors' bankruptcy estates.

Whether a debtor's interest constitutes "property of the estate" is a federal question. See Lewis, 137 F.3d at 1283. Nonetheless, "the nature and existence of the [debtor's] right to property is determined by looking at state law." Id. (quoting Southtrust Bank of Ala. v. Thomas (In re Thomas), 883 F.2d 991, 995 (11th Cir.

---

[1]The automatic stay provision of the Bankruptcy Code operates to enjoin a creditor from attempting to possess or exercise control over property of a bankruptcy estate once a petition has been filed. See 11 U.S.C. § 362. In Kalter, Bell-Tel refused to return the property to the Kalters, and the bankruptcy court determined that in so doing, Bell-Tel violated the automatic stay, and the court awarded damages to the Kalters. In Chiodo, however, Tidewater voluntarily returned the vehicle to Chiodo, and the bankruptcy court simply denied Tidewater's motion for relief from the automatic stay. As a result, the bankruptcy court never awarded damages to Chiodo, since Tidewater did not violate the automatic stay.

6

1989)). The Supreme Court laid out this principle squarely in <u>Butner v. United States</u>,

440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979), where it reasoned:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

<u>Id.</u> (quoting <u>Lewis v. Manufs. Nat'l Bank</u>, 364 U.S. 603, 609, 81 S. Ct. 347, 350, 5 L.

Ed. 2d 323 (1961)). We have had occasion to analyze the meaning of "property of the

estate" under Alabama state law, and have determined that in Alabama, a vehicle

repossessed prepetition does <u>not</u> qualify as part of the debtor's estate. <u>See</u> <u>Lewis</u>, 137

F.3d at 1285. In the instant appeals, we must determine whether a vehicle repossessed

prepetition qualifies as "property of the estate" under Florida law.

The only possible sources of Florida law relating to the rights and obligations

of a secured creditor repossessing a vehicle are these: (1) the Florida Uniform

Commercial Code -- Secured Transactions ("Florida UCC"), Fla. Stat. §§ 679 <u>et seq</u>.;

and (2) the Florida Certificate of Title statute, Fla. Stat. §§ 319 <u>et seq</u>. Although the

Florida UCC does not dispose of the issue of the ownership interests in a repossessed

vehicle, the Florida Certificate of Title statute does, as it plainly recognizes that

7

ownership of a vehicle passes to secured creditors upon repossession. We discuss both sources of Florida law in turn.

## A. The Florida UCC

The Florida UCC is the substantive law in Florida that governs generally the rights and obligations of debtors and secured creditors after repossession of collateral. Under the statute, a secured party usually can take possession of its property upon default without judicial process. See Fla. Stat. § 679.503.

After repossession, a secured party may dispose of or retain the property. If the secured party chooses to "sell, lease or otherwise dispose of any or all of the collateral," the debtor has a right to any surplus made from the sale, and upon disposition of the collateral, all of the debtor's rights therein and the security interest under which it is made are discharged. See Fla. Stat. § 679.504(1), (2), (4). If, however, the secured party chooses to retain the property, the secured party must send written notice of such proposal to the debtor. See Fla. Stat. § 679.505(2). The secured party may retain the collateral unless the debtor objects in writing within 30 days from the date of notification. See id. Upon an objection, the secured party must dispose of the collateral in accordance with Fla. Stat. § 679.504. See id.

At any time before the secured party has disposed of or entered into a contract to dispose of the collateral under § 679.504 or before the obligation has been

8

discharged under § 679.505(2), the debtor may redeem the collateral. See Fla. Stat. § 679.506. To do so, the debtor must tender fulfillment of all obligations secured by the collateral as well as the expenses incurred by the secured party in preparing for the disposition of the collateral. See id.

As this brief discussion illustrates, the Florida UCC grants a secured party the right to repossess collateral, but contains no language addressing title, the transfer of title, or the ownership of repossessed collateral. Instead, the statute is notably silent on the issue of ownership, providing this Court with no guidance as to who owned the Debtors' vehicles upon repossession.

The Debtors in these appeals nonetheless argue that sections of the Florida UCC can be construed to read that repossession does not transfer ownership from the debtor to the creditor. We are not persuaded by their arguments.

First, the Debtors argue that § 679.207 of the Florida UCC, which requires a secured party to take reasonable care of repossessed collateral, must evince the legislature's intent to maintain ownership with the debtor after repossession, because otherwise, § 679.207 would have no reason to provide the debtor with a cause of action for failure to use reasonable care after repossession. See In re Iferd, 225 B.R. 501, 502-03 (Bankr. N.D. Fla. 1998). On the contrary, there are many reasons the Florida UCC imposes on a creditor the duty to reasonably care for repossessed

collateral. For one, imposition of this duty minimizes a debtor's potential liability for any deficiency resulting from the creditor's disposition of the property. See Fla. Stat. § 679.504(2). In addition, this duty of reasonable care is consistent with a debtor's right to redeem the collateral, ensuring that the debtor may redeem the property in the same condition it was in at repossession. See Fla. Stat. § 679.506. Finally, this duty of reasonable care is indicative of the good faith requirement established in Fla. Stat. § 671.203 (requiring that "[e]very contract or duty within this code imposes an obligation of good faith in its performance or enforcement"). We therefore do not read § 679.207 as providing an answer to the basic question of whether the ownership interest remains with the debtor or passes to the creditor on repossession.

Second, the Debtors argue that § 679.504 of the Florida UCC establishes that ownership of repossessed collateral remains with the debtor, because it states that when the secured party sells the collateral to a purchaser, "all of the debtor's rights therein" pass to the purchaser. See Turner v. DeKalb Bank (In re Turner), 209 B.R. 558, 566 (Bankr. N.D. Ala. 1997). Yet, the term "debtor" as defined in the statute includes the owner of the collateral, even if he is not the person who owes payment of the obligation secured; for this reason, § 679.504(4)'s language concerning the rights of the "debtor" does not necessarily refer to the true debtor, and may encompass

either the debtor <u>or</u> the creditor in possession of the collateral.[2]  Plainly, this provision

does <u>not</u> signify, contrary to the Debtors' reading, that the debtor retains ownership.[3]

---

[2]Specifically, the Florida UCC defines "debtor," in any of the sections dealing with collateral, as "the owner of the collateral in any provision of the chapter dealing with the collateral, [and/or] the obligor in any provision dealing with the obligation."  Fla. Stat. § 679.105(d); <u>see also</u> Fla. Stat. § 679.112, cmt. (noting that the "debtor" may be the owner of the collateral even though he is not the person who owes payment or performance of the obligation secured).  As a result, when § 679.504(4) states that the rights of the "debtor" transfer to a purchaser, it refers to the owner of the collateral, and this owner may be either the debtor or the creditor in possession of the collateral.

[3]We are also unpersuaded by the Debtors' other arguments based on § 504.  For example, the fact that the statute uses the plural term "rights" instead of the  singular term "right," is not significant since the debtor retains several rights besides the right to redeem, including the right to surplus from, and the right to notice of, the sale of the collateral.  Besides, because the word "debtor" includes those who actually own the property and do not necessarily carry the obligations thereto, the "rights" include the entire bundle of ownership rights.

Additionally, we are unpersuaded by any reliance on the UCC's reference to a creditor's interest as a "security interest" or "lien," rather than an "ownership."  Fla. Stat. §§ 679.207, 679.504(4).  First, § 679.207 applies "when the secured party has possession of the collateral before default, as a pledgee, and also when he has taken possession of the collateral after default," <u>see</u> § 679.207, cmt.; thus, the provision uses the generic term "security interest" to apply to property that the creditor is simply holding in addition to property that it has repossessed.  Second, § 679.504(4) uses the terms to simultaneously clarify that any junior interests are also extinguished when the senior creditor disposes of the collateral.  Both provisions apply when the debtor retains a right to redeem collateral in the creditor's possession, and the language impliedly recognizes that the creditor will not lose his security interest or lien, even if it makes improper use of the collateral or the debtor chooses to redeem it.  As a result, this use of language in the statute fails to signify that the debtor continues to hold the ownership interest in the collateral.

Finally, it is inconsequential that § 504 allows the creditor to purchase the property at a public sale only under certain circumstances.  These limits exist because of the debtor's right to redeem, which necessarily restricts the creditor's ownership interest even if the creditor becomes the owner of the collateral upon repossession.  The right to redeem, however, is insufficient to trigger ownership of the vehicle itself, as we discuss below.

11

Third, the Debtors argue that the statutory right to redeem a repossessed vehicle is somehow sufficient to pull the vehicle itself into the bankruptcy estate. It is true that the Florida UCC replaces a debtor's rights in a vehicle with a right to redeem that vehicle and to recover damages if a creditor violates that right. See Fla. Stat. §§ 679.506, 679.507. However, we have already determined under Alabama law that the right to redeem a vehicle is an insufficient basis to render the vehicle itself "property of the [debtor's bankruptcy] estate." Lewis, 137 F.3d at 1284. In Lewis, this Court reasoned, "[i]n accordance with state law, one must take certain affirmative steps to change the otherwise dormant right to redeem repossessed collateral into a meaningful ownership interest. . . . [A debtor] had to 'tender[] fulfillment of all [secured] obligations' plus expenses to exercise the estate's right of redemption." Id. (citing Ala. Code § 7-9-506, which uses the same language as Fla. Stat. § 679.506). We determined that Lewis's proposed Chapter 13 plan, which tendered to the creditor sixty-two cents on the dollar in return for the debtor's continued use of the vehicle, offered no indication that the estate had chosen to exercise its right of redemption, that is, to fulfill the debtor's secured obligation plus expenses in accordance with Alabama's statutory right of redemption.

In the instant cases, the Debtors likewise have taken no steps to exercise their rights to redeem.[4] Thus, applying Lewis's analysis of identical language in the Alabama statute to the Florida UCC, in factual circumstances very much like Lewis, we hold that the Debtors' mere rights to redeem do not bring the vehicles into the Debtors' bankruptcy estates under Florida law. Indeed, not only do the various steps required to redeem suggest that this right does not signify ownership, but the statute itself recognizes a distinction between the two. The Florida UCC creates a category of "general intangibles," such as a right of redemption or a right to sue, see Fla. Stat. § 679.106, and separates general intangibles from "goods," which include tangible personal property such as a vehicle, see Fla. Stat. § 679.105(1)(h). This statutory distinction between a right of redemption in collateral and the ownership of collateral further confirms the conclusion that rights of redemption are wholly different from ownership interests.

Fourth and finally, the Debtors rely on Joyner v. Ettlinger, 382 So. 2d 27, 30

---

[4]At oral argument, the Kalters' counsel asserted that both sets of Debtors "exercised their rights of redemption," but there is no support in the record or briefs for this contention. In order to redeem repossessed collateral, a debtor must "tender[] fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party." Fla. Stat. § 679.506. Yet the Debtors have not shown that they tendered the full amount of the debts, plus reasonable expenses, to the Creditors. In Chiodo's appellate briefs, the parties recognize that Chiodo's Chapter 13 plan does not even pay Tidewater the full amount of the claim. Similarly, Bell-Tel noted in its reply brief before the district court that the Kalters' Chapter 13 plan also fails to pay Bell-Tel the full amount of the claim. Nothing to the contrary has been claimed by the parties. On this record, we conclude that the Debtors have not exercised their rights to redeem.

(Fla. Dist. Ct. App. 1980), to support the claim that under the UCC, a debtor's ownership in a vehicle is not divested until it either is sold to a third party under § 679.504, or is retained by a creditor under § 679.505(2).[5] While <u>Joyner</u> does hold that the superior interest holder did not become the owner of the collateral but rather became a secured party in possession of collateral, the decision does not contain any language regarding the status of a <u>debtor</u>'s ownership interest -- notably, it only discusses the relationship between two secured creditors, and does not examine the rights of a creditor vis-à-vis a debtor after repossession. This Florida court case does not say, and cannot be read to say, that the debtor still owns the collateral while the creditor in possession does not.

In short, based on the language of the Florida UCC, and the little case law interpreting the statute, we are constrained to conclude that the Florida UCC does not establish who owns the repossessed vehicles. We next look at the Florida Certificate of Title statute to determine whether it speaks to the vehicles' ownership.

B.  <u>The Florida Certificate of Title statute</u>

---

[5]In <u>Joyner</u>, two creditors were disputing their relative priorities in the same collateral. The Florida court held that because the superior interest holder never gave notice to the junior interest holder that it intended to retain the collateral in satisfaction of its interest, as Fla. Stat. § 679.505(2) requires, the superior interest holder did not have the right to full use of the collateral as if it were an owner. <u>See</u> <u>Joyner</u>, 382 So. 2d at 30. Rather, the court held that the superior interest holder had the right to possession of the collateral which must be exercised in accordance with Fla. Stat. § 679.207, governing the rights and duties that exist when collateral is in a secured party's possession. <u>See</u> <u>id.</u>

14

The Florida UCC establishes how a secured creditor may repossess and dispose of any type of secured collateral upon a debtor's default. Where a motor vehicle is the collateral at issue, however, Florida has codified specific legislation regarding ownership, title, and transfer, and we must look at the Florida Certificate of Title statute to determine how it speaks to ownership of repossessed vehicles. See Tug Allie-B, Inc. v. United States, 273 F.3d 936, 941 (11th Cir. 2001) ("[C]ourts generally adhere to the principle that statutes relating to the same subject matter should be construed harmoniously if possible, and if not, that more recent or specific statutes should prevail over older or more general ones.") (quoting Southern Natural Gas Co. v. Land, Cullman County, 197 F.3d 1368, 1373 (11th Cir. 1999) (quotations and citations omitted)). After reviewing the title statute, we are satisfied that its language and Florida case precedent lead to the conclusion that ownership in fact passed to the Creditors upon repossession.

The Florida statute generally provides that a certificate of title is required in order to obtain marketable title to sell a vehicle. See Fla. Stat. § 319.22.[6] If the vehicle at issue has been repossessed or otherwise transferred by operation of law,

---

[6]Fla. Stat. § 319.22 provides, in pertinent part:

> Except as provided in §§ 319.21 and 319.28, a person acquiring a motor vehicle . . . from the owner thereof . . . shall not acquire marketable title to the motor vehicle . . . until he or she has issued to him or her a certificate of title to the motor vehicle.

15

however, the statute provides an exception, allowing the party possessing the vehicle

to obtain a certificate of title from the Florida Department of Highway Safety and

Motor Vehicles ("Florida DMV"). See Fla. Stat. § 319.28(1)(a) ("In the event of a

transfer of ownership of a motor vehicle . . . by operation of law . . . whenever . . .

repossession is had . . ., the department may issue to the applicant a certificate of

title.").[7]   In such a situation, the creditor may submit an affidavit announcing the

---

[7]Fla. Stat. § 319.28, entitled "Transfer of ownership by operation of law," provides:

> In the event of a transfer of ownership of a motor vehicle or mobile home
> by operation of law as upon inheritance, devise or bequest, order in
> bankruptcy, insolvency, replevin, attachment, execution or other judicial
> sale or whenever the engine of a motor vehicle is replaced by another
> engine or whenever a motor vehicle is sold to satisfy storage or repair
> charges or repossession is had upon default in performance of the terms of
> a security agreement . . ., and upon the surrender of the prior certificate of
> title or, when that is not possible, presentation of satisfactory proof to the
> department of ownership and right of possession to such motor vehicle or
> motor home, and upon payment of the fee prescribed by law and
> presentation of an application for certificate of title, the department may
> issue to the applicant a certificate of title thereto. . . .

Fla. Stat. § 319.28(1)(a) (emphases added).  Section 319.28(2)(b) then provides:

> In case of repossession of a motor vehicle or mobile home
> pursuant to the terms of a security agreement or similar instrument,
> an affidavit by the party to whom possession has passed stating
> that the vehicle or mobile home was repossessed upon default in
> the terms of the security agreement or other instrument shall be
> considered satisfactory proof of ownership and right of possession.
> At least 5 days prior to selling the repossessed vehicle, any
> subsequent lienholder named in the last issued certificate of title
> shall be sent notice of the repossession by certified mail, on a form
> prescribed by the department. If such notice is given and no
> written protest to the department is presented by a subsequent
> lienholder within 15 days from the date on which the notice was

16

repossession as "proof of ownership." Fla. Stat. § 319.28(2)(b). With this language,

the Florida Certificate of Title statute expressly recognizes that ownership transfers

upon repossession,[8] see United States v. Carrell, 252 F.3d 1193, 1198 (11th Cir. 2001)

("In statutory construction, 'the plain meaning of the statute controls unless the

language is ambiguous or leads to absurd results.'") (quoting United States v.

McLymont, 45 F.3d 400, 401 (11th Cir. 1995) (per curiam)), and we therefore hold

that the Debtors lost ownership of their vehicles upon repossession.

---

mailed, the certificate of title or the certificate of repossession shall be issued showing no liens. If the former owner or any subsequent lienholder files a written protest under oath within such 15-day period, the department shall not issue the certificate of title or certificate of repossession for 10 days thereafter. If within the 10-day period no injunction or other order of a court of competent jurisdiction has been served on the department commanding it not to deliver the certificate of title or certificate of repossession, the department shall deliver the certificate of title or repossession to the applicant or as may otherwise be directed in the application showing no other liens than those shown in the application. Any lienholder who has repossessed a vehicle in compliance with the provisions of this section may apply to the tax collector's office or to the department for a certificate of repossession or to the department for a certificate of title pursuant to s. 319.323. Proof of the required notice to subsequent lienholders shall be submitted together with regular title fees. A lienholder to whom a certificate of repossession has been issued may assign the certificate of title to the subsequent owner . . . .

Fla. Stat. § 319.28(2)(b) (emphases added).

[8]Indeed, the Florida DMV has interpreted Fla. Stat. § 319.28 as providing "for the transfer of ownership of a motor vehicle by operation of law, to include repossession of a motor vehicle for non-fulfillment of a contract," as long as the secured creditor has possession of the vehicle. See Florida Department of Highway Safety and Motor Vehicles, DMV Procedures Manual, Procedure TL-23(I).

The bankruptcy court in the <u>Chiodo</u> case interpreted the statute differently, finding that "[t]itle does not transfer to a creditor immediately upon repossession," since "[n]umerous preliminary steps are required" before a creditor with a repossessed vehicle can obtain a new certificate of title and conclude a sale of a car. We are unconvinced.

First, under the statute, title typically transfers upon repossession unless affirmative steps are taken to <u>block</u> the transfer of title (not the other way around, as the bankruptcy court found). In fact, the statute <u>lessens</u> the steps a repossessor must take to obtain title. <u>See</u> Fla. Stat. § 319.28(2)(b) (allowing an affidavit to constitute proof of ownership). Moreover, filing a written protest does not prevent ownership from passing as a matter of law; instead, a court order is required to prevent the department from issuing a certificate of title to the creditor after repossession. <u>See</u> <u>id.</u> In the normal course of events, then, title plainly transfers, unless and until the debtor takes action.

Second, the statute specifically recognizes that a certificate of title is not even necessary to sell a repossessed vehicle. Normally, one can own a vehicle in Florida without having a certificate of title to it, but an owner cannot transfer ownership of a vehicle to a third party until the certificate of title is in his name. <u>See</u> Fla. Stat § 319.22. There is an exception to this rule: Under Fla. Stat. § 319.28(2)(b), a

18

lienholder that has repossessed a vehicle need not obtain a certificate of <u>title</u> in its name to transfer title, but instead can obtain a certificate of <u>repossession</u> from either the tax collector or the Florida DMV.  This streamlined process allows title transfer to occur when the third party purchaser buys the car, so that the name on the title changes directly from the debtor to the third party purchaser.  Thus, based on the plain language of this provision, allowing a creditor to transfer ownership without ever being listed as the owner on the certificate of title, we conclude that the bankruptcy court erred in holding that a creditor must be listed as the owner on the certificate of title to become the vehicle's actual owner.

Third, Florida courts have acknowledged that <u>no</u> certificate is necessary for ownership; as a result, the fact that the Creditors did not obtain any certificates prior to the bankruptcy filings is immaterial.  Indeed, several Florida courts have held that the certificate of title is merely evidence of ownership that may be refuted by other evidence.  <u>See, e.g.</u>, <u>Ragg v. Hurd</u>, 60 So. 2d 673, 674 (Fla. 1952) ("There is nothing in Chapter 319 to show that the Legislature intended that the provisions thereof respecting the endorsement and transfer of certificates of title or registration upon sale of a motor vehicle provide an <u>exclusive</u> method of transferring title to motor vehicles, and we do not think the Legislature so intended." (emphasis added)); <u>Cooney v. Jacksonville Trans. Auth.</u>, 530 So. 2d 421 (Fla. Dist. Ct. App. 1988) (recognizing that

19

factors other than title, such as who has the beneficial ownership of the car, may be relied upon to determine actual ownership of the car, and in turn to determine who is liable for the negligent operation of the car).

Furthermore, the method described in the Florida title statute is not the only way to transfer title, as actual title may pass without changing the name registered with the state. See, e.g., Bunting v. Daly's, Inc., 528 So. 2d 106, 107 (Fla. Dist. Ct. App. 1988) ("It has been settled law in this jurisdiction for many years . . . that the failure of the purchaser to obtain the title certificate at the time of sale does not prevent the passage of title from the seller to the buyer."); Correria v. Orlando Bank & Trust Co., 235 So. 2d 20 (Fla. Dist. Ct. App. 1970) (holding that a purchaser acquired title although he did not receive a certificate). Under this Florida case law, it is abundantly clear that a creditor can, contrary to the bankruptcy court's determination, own a vehicle without a certificate of title or a certificate of repossession in its name.

The Debtors nonetheless argue that because the Creditors recognize that one can own property without having marketable title to it, § 319.28 must concern only the procedure to obtain marketable title, and cannot be relied on as the substantive law governing ownership. Instead, the Debtors say, other substantive law, like the UCC, should be consulted to determine when ownership transfers.

We remain unpersuaded. Although marketable title is only <u>evidence</u> of ownership, § 319.28 squarely recognizes that an event of transfer of ownership is repossession. <u>See</u> Fla. Stat. § 319.28(1)(a) ("In the event of the transfer of ownership of a motor vehicle . . . whenever repossession is had upon default in performance of the terms of a security agreement . . . and . . . when presentation of satisfactory proof to the department of ownership . . . and upon payment of the fee . . . and presentation of an application for certificate of title, the department may issue to the applicant a certificate of title thereto."). In fact, § 319.28(2)(b) states that: "In case of repossession of a motor vehicle . . . pursuant to the terms of a security agreement . . ., an affidavit by the party to whom possession has passed stating that the vehicle . . . was repossessed upon default in the terms of the security agreement . . . shall be considered satisfactory proof of ownership." At a bare minimum, then, § 319.28 <u>recognizes</u> when ownership transfers, which in this circumstance is upon repossession.

Moreover, there is no other substantive law that establishes when ownership transfers. The UCC recognizes repossession, but does not discuss who owns the repossessed property and does not refer to title at all. Therefore, where no other substantive law on the transfer of ownership exists, and § 319.28 recognizes ownership transfer upon repossession, we rely on § 319.28 to speak to the issue.

Fourth, if the Florida legislature did not recognize repossession as one event

21

that effects an ownership change before the Florida DMV issues a title, the inclusion

of repossession in the Fla. Stat. § 319.28 exception to § 319.22 would make no sense.[9]

This exception evinces an intention to carve repossession and other "transfers of

ownership by operation of law" out of the certificate of title requirement, signifying

that such transfers by themselves constitute changes of ownership.

In short, based on our review of the language of the statute, we reject the

bankruptcy court's conclusion that a certificate of title is somehow required for the

Creditors to be deemed the "owners" of the repossessed vehicles.[10] Not only is a

certificate of title unnecessary to establish ownership, but Chapter 319 explicitly

recognizes repossession as a transfer of ownership. Indeed, the plain language of the

---

[9]The Debtors respond that § 319.28 functions only as a procedural protection for a debtor's ownership interest in a repossessed vehicle. Otherwise, they argue, if § 319.28 made a secured creditor the owner upon repossession, the statute's procedural protections for the debtor's post-repossession interest in the vehicle are rendered meaningless. Once again, we are unpersuaded by the Debtors' argument. The statute recognizes that the debtor retains a right to redeem, established by the UCC, and the procedures simply implement the debtor's right to redeem in the title context. But, as we have noted already, the debtor's right to redeem the repossessed vehicle is insufficient to pull the vehicle itself into the debtor's estate.

[10]The Kalter district court also disagreed with the Chiodo bankruptcy court, albeit on different grounds. The district court relied on: (1) § 319.28(2)(b)'s labeling of the debtor as the "former owner" of the repossessed vehicle; and (2) Johnson v. Aetna, 472 So. 2d 859 (Fla. Dist. Ct. App. 1985) (recognizing that a judgment of dissolution, conveying a vehicle to the wife without officially transferring title, made the wife legal owner of the vehicle by operation of law under Fla. Stat. § 319.28), to hold that ownership transfers upon repossession. While we agree that these arguments buttress this conclusion, we find them unnecessary, since the language of the statute plainly states that ownership transfers upon repossession. See, e.g., Frank v. Talcott, 692 F.2d 734, 737 (11th Cir. 1982) (recognizing that this Court may affirm a district court decision on reasoning other than that relied on by the district court).

statute even refers to an affidavit describing the repossession event as being "proof of ownership." Fla. Stat. § 319.28. Moreover, Florida case law holds that a certificate of title is merely evidence of, and is not a requirement of, establishing ownership; thus, the fact that the Creditors in these cases had not yet obtained certificates of title or certificates of repossession is insignificant.[11] We conclude, therefore, that Fla. Stat. § 319.28 recognizes that ownership passes when the creditor repossesses the vehicle.

Accordingly, we affirm the judgment of the district court in both cases, and hold that the vehicles repossessed prepetition were not "property of the [Debtors' bankruptcy] estate[s]" under § 541 of the Bankruptcy Code.

**AFFIRMED.**

---

[11]It is also insignificant that the Creditors had not yet filed an affidavit as proof of ownership in order to obtain the certificate of title. We find that the statute recognizes ownership transfer upon <u>repossession</u>, not upon the filing of an application for a certificate or upon the receipt of a certificate. As we reason above, the language of the statute compels this conclusion, especially in situations such as these where the repossessions were never alleged to be fraudulent.