370

COOK, ADMR. *v.* TALBERT.

4-9037                                          225 S. W. 2d 682.

Opinion delivered January 9, 1950.

*Harper, Harper & Young,* for appellant.

*George W. Johnson* and *Hardin, Barton & Shaw,* for appellee.

## OPINION

MINOR W. MILLWEE, Justice. Appellee, B. A. Talbert, brought this action against Cecil McNew to recover money alleged to be due on a contract entered into between them March 24, 1947. In the contract sued upon Talbert sold to McNew 99 shares of stock in the Arkansas Lime & Stone Company, a corporation, at $50 per share or a total purchase price of $4,950. Under the terms of the contract McNew agreed to furnish Talbert 3,000 tons of limestone of certain specifications at a net price of $1.65 per ton, that sum to be retained by Talbert until he had been paid the total purchase price of $4,950. The contract further provided that in the event that McNew failed to furnish sufficient limestone to Talbert to amount to 3,000 tons on or before January 1, 1948, then McNew would pay the balance due for said stock in cash.

In his complaint Talbert alleged that McNew had paid $701.25 on said contract by delivery of 425 tons of limestone, but had otherwise failed to perform his part of the contract although Talbert had complied therewith by transferring the stock to McNew. McNew died during the pendency of the action which was revived against appellant as administrator of McNew's estate.

The answer of the administrator admitted execution of the contract but denied other allegations of the complaint. The answer further alleged that McNew was at all times up to January 1, 1948, ready, willing and able to furnish Talbert with a sufficient quantity of limestone described in said contract necessary to discharge the payment thereof, but that Talbert breached the contract by refusing to accept same and thereby prevented McNew from performing the terms of the contract. By agreement of the parties, the case was tried before the circuit judge, sitting as a jury, resulting in judgment in favor of appellee.

The judgment recites: "The court further finds that the said Cecil McNew furnished 425 tons of said limestone, at $1.65 per ton, in the amount of $701.25 to be credited upon plaintiff's claim, and that the said defendant willfully failed and refused to furnish the balance of said limestone, as required under said contract, and the court further finds that under the said contract agreement between the said plaintiff and defendant, there is now due and unpaid the sum of $4,248.75, with interest from the 24th day of March, 1947, at the rate of 6% per annum."

For reversal appellant contends that the undisputed evidence shows that McNew at all times was ready, willing and able to perform his agreement to furnish the limestone under the contract, but that appellee's failure to order or purchase limestone constituted a breach of the contract which prevented McNew from performing his part of the contract.

We view the evidence under the well established rule that the finding of the circuit court, sitting as a

jury, on an issue of fact will not be disturbed on appeal where there is evidence legally sufficient to sustain it even though the finding appears to be contrary to the preponderance of the evidence. *Harris* v. *Ray,* 107 Ark. 281, 154 S. W. 499. We have also said that the finding of the circuit judge, sitting as a jury, on a question of fact is as conclusive on appeal as a jury verdict and will not be disturbed, if there is any substantial evidence to sustain the finding. We must also give the evidence adduced on behalf of appellee the strongest probative force that it will reasonably bear in determining whether there is substantial evidence to support the judgment. *Wallis v. Stubblefield, ante, p.* 119, 225 S. W. 2d. 322.

The plant of the Arkansas Lime & Stone Company was located at Valliant, Oklahoma, and was operated by McNew after his purchase of Talbert's stock. The plant produced crushed agricultural limestone which was sold to farmers through the AAA program of the federal government. The limestone is a soil conditioner and the government paid a part of the purchase price under the program. It is undisputed that Talbert ordered, and McNew furnished, 425 tons of limestone under the contract up to June 1, 1947. Government appropriations for assistance in the program expired about June 1, 1947, but again became available about a month later.

Reed Thomas, who purchased part of the limestone furnished to Talbert, testified that shortly after government appropriations again became available in July, 1947, he talked with McNew over the telephone in regard to further purchases and McNew told him he had moved his equipment away and was operating a coal mine at Mansfield, Arkansas, and was not shipping out any more limestone. McNew also told Thomas he was making more money out of the coal business than he was out of limestone, that it would not pay to move the equipment back to the limestone plant, and that he couldn't sell Thomas any more limestone.

Appellee stated that he made repeated requests to McNew for limestone after July, 1947, and that McNew

declined to furnish it. There was other evidence on behalf of appellee tending to show that McNew abandoned the limestone operations in July, 1947.

The limestone plant was located about two miles from the railroad and the 425 tons furnished under the contract were hauled from the plant by McNew and loaded on railroad cars in accordance with the agreement of the parties. It was shown that there was a stockpile of 429 tons of limestone at the Valliant plant in September, 1948, but there was also evidence that this limestone did not meet the specifications set out in the contract. While there was some evidence that McNew was able and willing to furnish limestone after July, 1947, there is an absence of proof that he actually tendered to Talbert any limestone after June 1, 1947, or that Talbert declined to accept limestone after that date.

Under the terms of the contract McNew agreed to furnish Talbert 3,000 tons of limestone of certain specifications prior to January 1, 1948, or, in the event of his failure to do so, to pay the balance of the purchase price of the stock in cash. McNew's obligation to furnish 3,000 tons of limestone under the contract required more than his mere willingness and ability to do so. The obligation to furnish required at least a tender of limestone and a refusal to accept it before Talbert could be said to have breached the contract. "Tender is an offer to perform a condition or obligation coupled with the present ability of immediate performance, so that were it not for the refusal of cooperation by the party to whom tender is made the condition or obligation would be immediately satisfied." Williston on Contracts, Rev. Ed., Vol. 6, § 1808. At § 1810 of the same work in a discussion of the essential characteristics of tender it is said: "There must be an unconditional offer to perform, coupled with a manifested ability to carry out the offer, and a production of the subject matter of the tender . . ." In the early case of *Day* v. *Lafferty,* 4 Ark. 450, the court held that a tender of a debt, payable in specific articles, cannot be made after the day of payment. The case of *McFarlane* v. *York,* 90 Ark. 88, 117 S. W. 773, involved a contract similar to the one

here and under which the defendants were privileged to pay a note in coal. It was held that the right to pay in coal ended on maturity of the note under the plain terms of the contract and that defendants were liable to plaintiff in cash for the balance due.

When considered in the light most favorable to appellee, the testimony in the instant case is substantial and sufficient to support the trial court's finding that McNew willfully failed to furnish 2,575 of the 3,000 tons of limestone on or before January 1, 1948, as required by the contract, and consequently became liable for the balance due on the purchase price of the stock in cash. The judgment is therefore correct, and is affirmed.