TELCOE CREDIT UNION *v.* Versa EACKLES

87-93                                    732 S.W.2d 477

Supreme Court of Arkansas
Opinion delivered July 20, 1987
[Rehearing denied September 14, 1987.*]

*Purtle, J., would grant rehearing.

150

*Homer Tanner* and *Wright, Lindsey & Jennings*, for appellant.

*Dodds, Kidd, Ryan & Moore*, for appellee.

TOM GLAZE, Justice. This case is one involving a debtor-creditor relationship. Appellee, Versa Eackles, executed two loan agreements with appellant, Telcoe Credit Union (Telcoe). Under the first agreement, Eackles borrowed $3,675.00. This loan was secured by her 1978 Couger XR7. The second loan was unsecured and in the amount of $483.00. About two months after the second loan was made, Eackles left her employment with Southwestern Bell and defaulted in her loan payments. Telcoe subsequently repossessed Eackles's Cougar. Eackles then filed this suit, alleging Telcoe had unlawfully converted her automobile. Telcoe answered, denying Eackles's allegations, and counterclaimed for the amounts due on both loans. At trial, Eackles was awarded a jury verdict of $3,000.00 in compensatory damages and $8,000.00 in punitive damages; Telcoe received a judgment for $1,831.25. Telcoe brings this appeal, and argues, among other things, that the trial court should have granted Telcoe a directed verdict. We agree.

As an element of her conversion action against Telcoe, Eackles was required to show that she had made legal tender of

the amount owed on the secured loan and that Telcoe thereafter refused to return the collateral, her Cougar automobile. Eackles admits she never tendered the actual cash or a check to satisfy the amount owed Telcoe, but argues that was unnecessary. Eackles explains that she had told Telcoe that she would pay the amount due on the first or secured loan, but that Telcoe refused her offer, demanding, instead, the total amount owed on both loans. In addition, Eackles had her attorney follow up her offer by letter, advising Telcoe that she was "ready, willing and able" to tender the amount owed on the secured loan.

The issue for us to decide is narrowed, then, to whether Eackles's verbal and her attorney's written offers satisfy a lawful tender. If not, her action for conversion must fail, since Telcoe would not have been required to return Eackles's car until a legal tender had been made. This court's decision in *Cook* v. *Talbert*, 216 Ark. 370, 373, 225 S.W.2d 682, 684 (1950) is controlling. There, this court defined tender as follows:

> "Tender is an offer to perform a condition or obligation coupled with the present ability of immediate performance, so that were it not for the refusal of cooperation by the party to whom tender is made the condition or obligation would be immediately satisfied." Williston on Contracts, Rev. Ed., Vol. 6, § 1808. At § 180 of the same work in a discussion of the essential characteristics of tender it is said: "*There must be an unconditional offer to perform, coupled with a manifested ability to carry out the offer, and a production of the subject matter of the tender . . .*" (Emphasis supplied.)

As already noted, Eackles undisputedly failed to produce the money or its equivalent as a part of her offer to perform (pay), and as a consequence, Telcoe had not been placed in a position of having refused it.[1] We believe the facts of this case

---

[1] The dissenting opinion suggests that because Telcoe demanded both loans be paid before it returned the vehicle to Eackles, the law would not require Eackles to do the vain and useless act of tendering payment only on the secured loan. This waiver theory was not argued on appeal or below nor did appellee request the trial court to instruct the jury concerning waiver. Instead, the trial court instructed the jury only that Eackles must prove that (1) Telcoe repossessed Eackles's vehicle, (2) Eackles demanded return of her vehicle and (3) she made legal tender to Telcoe. Because Eackles never advanced the waiver

illustrate the underlying rationale of the rule adopted in *Talbert*. When Eackles defaulted on her loans, she was also without employment. Obviously, such circumstances, in themselves, appear inconsistent with her claim that she possessed the present ability of immediate performance, i.e., her ability to pay the secured-loan balance. We believe the rule requiring that an actual production of the subject matter of the tender—in this case, the money or its equivalent—is a reasonable threshold requirement of the law before imposing any liability against Telcoe for its refusal to return its collateral.

■ Finally, Telcoe urges that the trial court erred in failing to grant a new trial because the only evidence presented reflects that Eackles owed $2,358.47, not the $1,831.25 amount the jury awarded Telcoe on its counterclaim. Eackles's only response to this point is that the jury must have awarded the reduced amount because of Telcoe's wrongful conversion of her car. In view of our holding that no such conversion occurred, the jury's consideration of that factor, in awarding damages, was misplaced. Because Eackles was indebted to Telcoe on two loans, and any damages resulting from her default on them are susceptible of definite pecuniary measurement, we must reverse and remand this matter for a new trial for the correct assessment of recovery. *See* Rule 59(a)(5) of the Arkansas Rules of Civil Procedure and *Roberts* v. *Simpson*, 275 Ark. 181, 628 S.W.2d 308 (1982).

Consistent with the foregoing, we reverse the judgment in its award of punitive damages to Eackles and remand this cause for trial on Telcoe's counterclaim and request for the assessment of damages on the two loans.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I disagree that the trial court should have granted a directed verdict in favor of Telcoe. I believe it was a fact question as to whether Telcoe had waived the requirement of a tender by making it clear, through its manager, Mrs. Sarah Mosely, that Telcoe would release Mrs. Eackles' car only upon payment of the entire amount due, that is, the balance of the unsecured debt plus the $535.17 due on the debt secured by

theory here or below, we are unable to consider it in deciding this case.

the automobile.

Mrs. Eackles testified that she offered to pay the $535 due on the car loan, but was told by Mrs. Mosely that she would have to pay both loans before the car would be released. Mrs. Mosely's testimony clearly confirms Mrs. Eackles' version (R.p. 93):

Q: Did you tell her (Mrs. Eackles) that you would not give her the automobile unless she paid both accounts?

A: I told her I wanted the money for both of them.

\* \* \*

Q: In fact, weren't you trying to collect those loans before you would release her car?

A: I asked for all of her balances.

Q: You made it clear to her that I'm not going to give you this car until you pay off every dime you owe?

A: Yes, sir. (R.p. 98).

Moreover, it is equally clear that Mrs. Mosely knew she had no legal right to take this position (R.p. 76-77):

Q: Mrs. Mosely, did you feel like, legally, you could retain this lady's vehicle for an unsecured loan, a signature loan?

A: If she brought the money in I knew I couldn't.

Q: If she brought the $500 in?

A: That's right.

Q: You knew you couldn't?

A: I knew I shouldn't try.

Additionally, Mrs. Eackles' lawyer sent a certified letter to Telcoe within a week of the repossession to say that Mrs. Eackles was ready, willing and able to tender the amount due on the secured debt and had already communicated that offer to Telcoe.

The letter went on to state:

> I understand Telcoe refuses to return Mrs. Eackles automobile unless she pays the balance owing on an unsecured loan . . . and it is my opinion that you are wrongfully holding Mrs. Eackles automobile resulting in damages to her.
>
> If this automobile is not released immediately and my office contacted, I will have no alternative but to pursue further legal actions on Mrs. Eackles behalf for wrongful conversion of her automobile and for punitive and compensatory damages.

That letter went unanswered so far as this record is concerned and there is no evidence that Mrs. Mosely or anyone else at Telcoe ever indicated to Mrs. Eackles or her lawyer that Telcoe would accept any amount other than the entire amount. On these facts it was for a jury to decide whether tender was waived by Telcoe.

Our cases recognize that the requirement of a tender can be waived. In *Miller* v. *Willey Real Estate*, 257 Ark. 961, 521 S.W.2d 68 (1975), we said, "The law does not require a tender of payment where it would be a vain and useless effort." And in *Read's Drug Store* v. *Hessig-Ellis Drug Co.*, 93 Ark. 497, 125 S.W. 434 (1910):

> On general principles, whenever the act of one party, to whom another is bound to tender money, services, or goods, indicates clearly that the tender, if made, would not be accepted, the other party is excused from technical performance of his agreement. The law never requires a vain thing to be done.

In *Athans* v. *Jones*, 277 S.W.2d 192 (Tex. 1955) the court stated:

> Although the debtor is not excused from tendering payment by reason of the creditor's exorbitant demand, tender is excused when the demand for payment of a sum greater than that which is due under a contract implies a refusal to accept the sum which is due.

And see *Hallowoa* v. *Buck*, 174 Ark. 497, 296 S.W. 74 (1927).

The Missouri Supreme Court, in *Owens* v. *Automobile Recovery Bureau, Inc.*, 544 S.W.2d 26 (1976), on facts very similar to those before us, determined that tender was waived where the creditor takes any position which would make "a tender a vain and idle ceremony," so long as the position taken by the creditor is maintained.

Had Telcoe followed the simple expediency of answering the letter from Mrs. Eackles' lawyer to state it was prepared to accept the correct amount, this needless litigation might well have been avoided. As it turns out, with the vehicle sitting in storage for nearly three years, everyone loses.