**In re Ezra MENASCHE and Janeth Menasche, Debtors.**

**No. 03–27656–BKC–PGH.**

United States Bankruptcy Court, S.D. Florida.

Nov. 7, 2003.

Michael J. Brooks, Miami, FL, for Debtors.

Robin R. Weiner, Ft. Lauderdale, FL, trustee.

***MEMORANDUM OPINION DENYING DEBTORS' EMERGENCY MOTION TO REDEEM REPOSSESSED AUTOMOBILE THROUGH CHAPTER 13 PLAN AND TO COMPEL TURNOVER OF AUTOMOBILE***

PAUL HYMAN, JR., Bankruptcy Judge.

**THIS MATTER** came before the Court for hearing on October 27, 2003, upon Ezra Menasche and Janeth Menasche's (the "Debtors") Emergency Motion to Redeem Repossessed Automobile Through Chapter 13 Plan and to Compel Turnover of Automobile (the "Motion"). Eastern Financial Florida Credit Union (the "Creditor") filed an Amended Response to Debtors' Motion on October 28, 2003.

### FINDINGS OF FACT

1. Debtors were obligated to Creditor on an automobile loan for the purchase of a 2001 Hyundai 300.

2. Debtors defaulted on the automobile loan.

3. The automobile was repossessed at or around 8:00 a.m. on October 20, 2003.

4. Debtors filed for relief under Chapter 13 of the Bankruptcy Code at or about 12:20 p.m. on October 20, 2003, the same day that the vehicle was repossessed.

5. The Debtors propose to exercise their right of redemption by paying the remaining balance on the automobile loan plus interest, repossession expenses, and attorney's fees (the "Redemption Amount") over the course of their chapter 13 plan. The Debtors have not offered to immediately tender the Redemption Amount in a lump sum payment.

### CONCLUSIONS OF LAW

Debtors' Motion seeks turnover of the Debtors' repossessed automobile, and seeks an order authorizing redemption of the automobile through Debtors' Chapter 13 plan. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

*A.  Right to Redeem Vehicle Is Not Sufficient To Compel Turnover*

■ Prior to the Eleventh Circuit's ruling in *Bell–Tel Federal Credit Union v. Kalter (In re Kalter)*, 292 F.3d 1350 (11th Cir.2002), bankruptcy courts in the state of Florida had consistently held that a debtor whose motor vehicle was repossessed but not sold or otherwise disposed of prior to filing a bankruptcy petition, retained title to the motor vehicle as of the petition date, and was therefore entitled to reacquire possession of the motor vehicle. *In re Ragan*, 264 B.R. 776, 777 (Bankr.S.D.Fla. 2001) (citations omitted). These cases reasoned that until the creditor obtained a new certificate of title, the debtor retained sufficient ownership rights to render the motor vehicle property of the estate pursuant to 11 U.S.C. § 541, and thus the debtor was entitled to turnover of the vehicle pursuant to 11 U.S.C. § 542. This line of cases was overruled[1] by *Kalter's* holding that under Florida law, repossessed vehicles are not property of the bankruptcy estate. *Kalter* noted that although the question whether a debtor's' interest constitutes "property of the estate" is determined by federal law, "the nature and existence of the [debtor's] right to property is determined by looking at state law." *Kalter*, 292 F.3d. at 1353.

The Eleventh Circuit interpreted Florida's version of the Uniform Commercial Code ("UCC") and Florida's Title Certificate Statute in *Kalter*. The court noted

that while Florida's UCC governs the rights and obligations of debtors and secured creditors after repossession of collateral, it is "notably silent on the issue of ownership, providing th[e] Court with no guidance as to who owned the Debtors' vehicles upon repossession." *Id.* at 1354. The *Kalter* debtors argued that various UCC sections can be construed to show that repossession does not transfer ownership from the debtor to the creditor. The debtors submitted that the legislature's intent to maintain debtor's ownership after repossession could be found in: § 679.207[2] which requires a secured party to take reasonable care of repossessed collateral, § 679.504[3] which retains for the debtor the right to surplus from, and the right to notice of, the sale of the collateral, and § 679.506[4] which provides the debtor with a right to redeem the collateral. The Eleventh Circuit was unpersuaded by debtor's argument.[5] *Id.*

The Eleventh Circuit also rejected debtors' argument that ownership of repossessed collateral remains with the debtor because § 679.504 states that when the "secured party sells the collateral to a purchaser, *'all of the debtor's rights therein' pass to the purchaser."* *Id.* at 1354 (emphasis added). The Eleventh Circuit noted that as defined in the statute, the term "debtor" includes the owner of the collateral even if he is not the person who owes payment of the obligation. Thus, § 679.504(4) referring to the rights of the

---

**1.** *In re Garcia*, 276 B.R. 699 (Bankr.S.D.Fla. 2002), a decision by this Court is one of the cases overruled by *Kalter*.

**2.** Revised Article Nine was effective in Florida on January 1, 2002. Fla. Stat. § 679.207 has been replaced by Fla. Stat. § 679.2071.

**3.** Fla. Stat. § 679.504 has been replaced by Fla. Stat. §§ 679.610, 679.611, 679.615, 679.617, 679.618, and 679.624 effective January 1, 2002.

**4.** Fla. Stat. § 679.506 has been replaced by Fla. Stat. §§ 679.623 and 679.624 effective January 1, 2002.

**5.** *But cf. In re Sanders*, 291 B.R. 97 (Bankr.E.D.Mich.2003)(concluding that similar provisions under Michigan law evidence a debtor's continuing ownership interest in a repossessed vehicle, the court compelled turnover of the vehicle to the debtor).

"debtor" does not necessarily refer to the true debtor, and may encompass either the debtor or the creditor in possession of the collateral.[6]

Finding that Florida's UCC did not determine ownership interests in a repossessed vehicle, the Eleventh Circuit turned to Florida's Title Certificate Statute. The Court found that "[a]lthough marketable title is only *evidence* of ownership, § 319.28[7] recognizes that" repossession is an event of transfer of ownership. *Kalter,* 292 F.3d at 1359 (emphasis in original). Florida Statutes § 319.28(2)(b) provides that "[i]n case of repossession of a motor vehicle ... pursuant to the terms of a security agreement ..., an affidavit by the party to whom possession has passed stating that the vehicle ... was repossessed upon default in the terms of the security agreement ... shall be considered satisfactory proof of ownership." *Id.* (quoting Fla. Stat. § 319(2)(b)). Finding no other substantive law that establishes when ownership transfers, the Eleventh Circuit concluded that under Florida law, "ownership passes when the creditor repossesses the vehicle." *Id.* at 1360.

Upon repossession, the debtor is thus left with the statutory right to redeem the repossessed vehicle and the right to recover damages if the creditor violates that right. The debtor's right to redeem may be exercised at any time before the secured party disposes of, or enters into a contract for its disposition. Fla. Stat. § 679.623. While the debtor's statutory right of redemption in a repossessed automobile becomes "property of the estate" at the commencement of the case, "the mere existence of the estate's ability to redeem the automobile [does not render] the automobile itself 'property of the estate,' at least to the extent that it should be turned over pursuant to 11 U.S.C. § 542(a)." *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis),* 137 F.3d 1280, 1284 (11th Cir.1998)(decided under Alabama law).

*Kalter,* noting the identical language of the Alabama statute in the Florida UCC, adopted *Lewis'* analysis to cases arising under Florida law. The court noted a distinction between a right of redemption in collateral and the ownership of collateral. *Kalter,* 292 F.3d at 1356. "In accordance with state law, one must take certain affirmative steps to change the otherwise dormant right to redeem repossessed collateral into a meaningful ownership interest." *Lewis,* 137 F.3d at 1284.

The Court concludes that in the instant case, the Debtors may not regain possession of their vehicle unless they redeem the vehicle as provided by Florida Statutes § 679.623. *See In re Ragan,* 264 B.R. 776, 779 (Bankr.S.D.Fla.2001)(holding under similar facts that to regain possession, the debtor must redeem the prepetition repossessed vehicle in accordance with Florida law); *In re Fox,* 274 B.R. 909 (Bankr. M.D.Fla.2002).

*B. Exercising the Right to Redeem*

■ In order to exercise the post-repossession right to redeem collateral, a debtor must comply with Fla. Stat. § 679.623 which states:

679.623. Right to redeem collateral

(1) A debtor, any secondary obligor, or any other secured party or lienholder may redeem collateral.

---

6. *See* Robert B. Chapman, *Bankruptcy,* 53 Mercer L.Rev. 1199, 1233(2002) suggesting that this analysis is called into doubt by Revised Article Nine's new definition of "debtor" which excludes the secured creditor.

7. Fla. Stat. § 319.28 is titled, Transfer of Ownership by Operation of Law.

(2) To redeem collateral, a person shall tender:

(a) Fulfillment of all obligations secured by the collateral; and

(b) The reasonable expenses and attorney's fees described in § 679.615(1)(a).

(3) A redemption may occur at any time before a secured party:

(a) Has collected collateral under § 679.607;

(b) Has disposed of collateral or entered into a contract for its disposition under § 679.610; or

(c) Has accepted collateral in full or partial satisfaction of the obligation it secures under § 679.622.

The remaining issue is whether the Debtors may exercise their right to redeem the collateral by paying the full Redemption Amount over the course of their Chapter 13 plan and thereby regain possession of the vehicle. As discussed below, the Court finds that Debtors' proposed redemption through their chapter 13 plan does not satisfy the § 679.623 requirement to "tender fulfillment of all obligations secured by the collateral", and therefore the Debtors' proposed redemption does not operate to bring the vehicle within the property of the bankruptcy estate, such that Debtors may compel its turnover.

The Official Uniform Commercial Code Comment discussing section 9–623 states:

To redeem the collateral a person must tender fulfillment of all obligations secured, plus certain expenses. If the entire balance of a secured obligation has been accelerated, it would be necessary

to tender the entire balance. A tender of fulfillment obviously means more than a new promise to perform an existing promise. *It requires payment in full of all monetary obligations then due* and performance in full of all other obligations then matured.

U.C.C. § 9–623 cmt. 2 (2003)(emphasis added)

■ Debtors submit that, unlike the debtors in *Kalter* whose proposed chapter 13 plan failed to pay creditor the full amount of the claim, and unlike the debtors in *Lewis* whose proposed chapter 13 plan merely tendered sixty-two cents on the dollar to creditor, the Debtors in this case plan to propose a Chapter 13 plan that will pay the full Redemption Amount as required by Fla. Stat. § 679.623. The Debtors argue that the Eleventh Circuit, by making specific findings regarding the *Kalter* and *Lewis* debtors' less than one hundred percent payments through their chapter 13 plans, left open the possibility that payment of the full Redemption Amount through a chapter 13 plan is permissible. The Court finds that even if the chapter 13 plan were to pay the full Redemption Amount, where the balance of the secured obligation has been accelerated as in this case, payment over time does not equal a tender of the entire balance as described in the Official Commercial Code Comment. U.C.C. § 9–623 cmt. 2 (2003)[8].

■ "A valid tender requires readiness, willingness, and ability to perform as required by the agreement." *Voutiritsas v. Intercounty Title Co. Of Illinois,* 279 Ill.App.3d 170, 215 Ill.Dec. 773, 664 N.E.2d 170, 180 (1996)(debtor's argument that ten-

---

**8.** "While the official comments to the Uniform Commercial Code are not controlling as an absolute expression of legislative intent, they are a 'valuable aid' in the construction of code provisions." *Warren v. SouthTrust Bank (In re Warren),* 221 B.R. 843, 847 n. 2

(Bankr.N.D.Ala.1998)(noting numerous cases citing the official comments to the Uniform Commercial Code by the Court of Appeals for the Eleventh Circuit and by the courts of other jurisdictions) (citations omitted).

der was made by letter stating plaintiff "might consider tendering" amount due but where funds were not deposited with creditor, was unavailing) (citations omitted). "To make an effective tender, the debtor must actually attempt to pay the sums due; mere offers to pay, or declarations that the debtor is willing to pay, are not enough." *Southfork Investments Group, Inc. v. Williams,* 706 So.2d 75, 79 (2d Fla. Dist.Ct.App.1998)(holding that debtor's letter of intention to redeem collateral, stating funds had been deposited into trust account of debtor's attorney and that debtor was willing to pay reasonable legal expense and costs, was not an effective attempt at redemption under Fla. Stat. § 679.506). "[A]n actual production of the subject matter of the tender—in this case, the money or its equivalent—is a reasonable threshold requirement of the law" for a lawful tender. *Telcoe Credit Union v. Eackles,* 293 Ark. 149, 732 S.W.2d 477, 479 (1987)(ruling that neither debtor's verbal offer to pay nor the attorney's written offer to pay are lawful tender requiring creditor to return repossessed vehicle).

The Court concludes that Florida Statutes § 679.623 requirement to "tender fulfilment of all obligations secured by the collateral" in order to redeem repossessed collateral, means to present payment of the entire balance in a lump sum. Debtor's intention to propose a Chapter 13 plan that will pay the full Redemption Amount over time is ineffective to redeem the repossessed vehicle. A mere willingness to pay is not sufficient to constitute "tender" as required by § 679.623.

Had Debtors actually filed a Chapter 13 plan that included payment of the full Redemption Amount over the course of the plan, there still would not have been an effective exercise of the Debtors' right of redemption enabling Debtors to regain possession of the automobile. In *Commercial Fed. Mortgage Corp. v. Smith (In re Smith),* the Eleventh Circuit determined under Alabama law that the right to redeem real property after a foreclosure sale requires a lump sum payment of all amounts due within one year after foreclosure. *Smith,* 85 F.3d 1555, 1558 (11th Cir.1996). The Eleventh Circuit further determined that 11 U.S.C. § 1322(b) does not permit a debtor "to exercise his state statutory right of redemption in a Chapter 13 plan by 'curing' a default and 'reinstating' a mortgage after a valid foreclosure sale". *Id.* at 1557 and 1560. The court reasoned that "[s]ection 1322 allows modifications only to the extent there exists something to modify[,] [o]nce the debtors' claim to title is extinguished at a foreclosure sale, § 1322(b) is no longer applicable." *Id.* at 1559 (quoting *In re McKinney,* 174 B.R. 330, 338 (Bankr.S.D.Ala. 1994)). The Eleventh Circuit held that the debtor could not modify his statutory right of redemption under a Chapter 13 plan that is filed after a foreclosure sale. *Id.* at 1560.

*Smith's* holding is relevant to this case. Having determined under Florida law that Debtors' ownership rights are terminated upon repossession and that exercise of Debtors' redemption right requires a lump sum payment of the Redemption Amount, the Court finds that *Smith* prohibits redemption through the Chapter 13 plan. Permitting redemption payments over time through the Debtors' Chapter 13 plan would modify the § 679.623 requirement to "tender fulfilment of all obligations secured by the collateral" and be inconsistent with the Eleventh Circuit's ruling that a debtor may not modify a statutory right of redemption under a Chapter 13 plan. *Smith,* 85 F.3d at 1560. *See In re Warren,* 221 B.R. 843, 848 n. 5 (even if Debtor's Chapter 13 plan were to pay the entire

amount due, under Alabama law the debtor could not redeem repossessed vehicle through Chapter 13 plan).

The Court is aware of cases in other jurisdictions that permit a debtor to redeem a prepetition repossessed vehicle through a Chapter 13 plan. *See e.g. Nat'l City Bank v. Elliott (In re Elliott),* 214 B.R. 148 (6th Cir. BAP 1997)(despite creditor's acquisition of repossession title, redemption did not require a lump sum payment, and treatment of debt in the Chapter 13 plan was permitted by 11 U.S.C. § 1322(b)(3) and (5)); *Tidewater Fin. Co. v. Moffett (In re Moffett),* 288 B.R. 721, 732 (Bankr.E.D.Va.2002)(concluding that "a Chapter 13 plan which pays secured creditor in full by resuming contract payments and by paying delinquent installments within a reasonable period of time is a permissible method of redemption in Chapter 13 [that] fully protects the secured creditor's rights"); *In re Rozier,* 283 B.R. 810 (Bankr.M.D.Ga.2002)(under Georgia law, unlike Florida law, a debtor's rights of ownership do not terminate until the collateral is sold by the secured creditor or by legal process); *In re Robinson,* 285 B.R. 732, 739 (Bankr.W.D.Okla.2002)(subject to confirmation, the "[d]ebtor's proposed plan is a permissible method of retaining her vehicle").

Under the laws of their respective states, these cases generally hold that repossession of a vehicle does not immediately extinguish a debtor's title to the vehicle. Therefore the vehicle itself, rather than just the right to redemption, remains property of the estate such that the debtor can compel turnover from the secured creditor.

In addition, these cases generally find that 11 U.S.C. § 1322 permits a Chapter 13 debtor to cure a default and reinstate an accelerated note through the debtor's Chapter 13 plan. "The right to cure default and reinstate an accelerated note is

granted by federal bankruptcy law and cannot be frustrated by the law of any state. By allowing debtors to cure defaults in cases in which there is still a right of redemption under state law, [11 U.S.C. § 1322(b)(3)] furthers the intent of Chapter 13 which is to facilitate debtor rehabilitation while protecting the rights of creditors." *Anderson v. Assoc. Commercial Corp.,* 29 B.R. 563, 565 (Bankr.E.D.Va.1983)(citing *In re Taddeo,* 685 F.2d 24, 28 (2d Cir.1982)).

Under Florida law, as distinguished from the law in the states of the above cases, the Debtors' ownership interest passes to the secured creditor upon repossession. The Debtors' remaining right to redeem the vehicle is insufficient to render the vehicle property of the estate under 11 U.S.C. § 541, or to compel its turnover under 11 U.S.C. § 542.

### *CONCLUSION*

For the reasons stated above, the Court denies Debtors' Motion. To regain possession of their repossessed automobile, Debtors must exercise their right of redemption in accordance with Florida law before the secured creditor sells or otherwise disposes of the vehicle. Debtor's intent to propose a Chapter 13 plan that will pay the full Redemption Amount over the course of their Chapter 13 plan is an ineffective exercise of Debtors' right of redemption under Fla. Stat. § 679.623.

### *ORDER*

The Court, having considered Debtors' Motion, Creditor's Response, the argument of counsel, and being otherwise fully advised in the premises, hereby:

**ORDERS AND ADJUDGES** that Debtors' Motion is **DENIED.**